IN the MATTER OF DISCIPLINARY PROCEEDINGS AGAINST
Steve J. POLICH, Attorney at Law:

OFFICE OF LAWYER REGULATION, Complainant,

v.

Steve J. POLICH, Respondent.

Supreme Court

*No. 03–1071–D. Decided March 25, 2005.*

2005 WI 36

(Also reported in 694 N.W.2d 367.)

¶ 1. PER CURIAM. We review the findings of fact, conclusions of law, and recommendations of Referee

Cheryl Rosen Weston for sanctions, pursuant to SCR 22.17(2).[1] Attorney Steve J. Polich was found to have engaged in unprofessional conduct in the course of his practice of law in violation of the Rules of Professional Conduct. The referee recommended a public reprimand and payment of an unspecified proration of the costs.

¶ 2. We approve the findings, conclusions and recommendations, and determine that Attorney Polich's misconduct warrants a public reprimand. However, we disagree with the recommendation for a proration of costs and conclude that Attorney Polich should pay the entire amount.

¶ 3. Attorney Polich was licensed to practice law in Wisconsin in 1982. He has had prior administrative suspensions in 1991 and 1993, both followed by reinstatement, for noncompliance with Continuing Legal Education (CLE) requirements.

¶ 4. This court adopts the referee's findings of fact unless clearly erroneous. *In re Disciplinary Proceedings Against Charlton,* 174 Wis. 2d 844, 498 N.W.2d 380 (1993). No deference is granted to the referee's conclusions of law and they are reviewed de novo. *In re Disciplinary Proceedings Against Norlin,* 104 Wis. 2d 117, 310 N.W.2d 789 (1981). The court may impose whatever sanction it deems appropriate regardless of the referee's recommendation. *In re Disciplinary Pro-*

---

[1] SCR 22.17(2) provides: Review; appeal.

(2) If no appeal is filed timely, the supreme court shall review the referee's report; adopt, reject or modify the referee's findings and conclusions or remand the matter to the referee for additional findings; and determine and impose appropriate discipline. The court, on its own motion, may order the parties to file briefs in the matter.

*ceedings Against Widule,* 2003 WI 34, 261 Wis. 2d 45, 660 N.W.2d 686.

¶ 5. This case involves seven counts of alleged misconduct. Count one alleges a violation of SCR 20:1.3[2] (failure to act with reasonable diligence and promptness in representing a client). Counts two and three allege violations of SCR 20:3.3[3] (knowingly making a false statement of fact to a tribunal). Count four alleges a violation of SCR 20:7.5(a)[4]

---

[2] SCR 20:1.3 provides: Diligence.

A lawyer shall act with reasonable diligence and promptness in representing a client.

[3] SCR 20:3.3 provides: Candor toward the tribunal.

(a) A lawyer shall not knowingly:

(1) make a false statement of fact or law to a tribunal;

(2) fail to disclose a fact to a tribunal when disclosure is necessary to avoid assisting a criminal or fraudulent act by the client;

(3) fail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel; or

(4) offer evidence that the lawyer knows to be false. If a lawyer has offered material evidence and comes to know of its falsity, the lawyer shall take reasonable remedial measures.

(b) The duties stated in paragraph (a) apply even if compliance requires disclosure of information otherwise protected by Rule 1.6.

(c) A lawyer may refuse to offer evidence that the lawyer reasonably believes is false.

(d) In an ex parte proceeding, a lawyer shall inform the tribunal of all material facts known to the lawyer which will enable the tribunal to make an informed decision, whether or not the facts are adverse.

[4] SCR 20:7.5(a) provides: Firm names and letterheads.

and SCR 20:7.1(a)[5] (making a false or misleading communication about the lawyer or the lawyer's services). Count five alleges a violation of SCR 31.10(1)[6] and SCR

(a) A lawyer shall not use a firm name, letterhead or other professional designation that violates Rule 7.1. A trade name may be used by a lawyer in private practice if it does not imply a connection with a government agency or with a public or charitable legal services organization and is not otherwise in violation of Rule 7.1.

[5] SCR 20:7.1(a) provides: Communications concerning a lawyer's services.

(a) A lawyer shall not make a false or misleading communication about the lawyer or the lawyer's services. A communication is false or misleading if it:

(1) contains a material misrepresentation of fact or law, or omits a fact necessary to make the statement considered as a whole not materially misleading;

(2) is likely to create an unjustified expectation about results the lawyer can achieve, or states or implies that the lawyer can achieve results by means that violate the Rules of Professional Conduct or other law;

(3) compares the lawyer's services with other lawyers' services, unless the comparison can be factually substantiated; or

(4) contains any paid testimonial about, or paid endorsement of, the lawyer without identifying the fact that payment has been made or, if the testimonial or endorsement is not made by an actual client, without identifying that fact.

[6] SCR 31.10(1) provides: Noncompliance.

(1) If a lawyer fails to comply with the attendance requirement of SCR 31.02, fails to comply with the reporting requirement of SCR 31.03(1), or fails to pay the late fee under SCR 31.03(2), the board shall serve a notice of noncompliance on the lawyer. This notice shall advise the lawyer that the state bar membership of the lawyer shall be automatically suspended for failing to file evidence of compliance or to pay the late fee within 60 days after service of the notice. The board shall certify the names of all lawyers so

20:8.4[7] (engaging in the practice of law while State Bar membership is suspended for a CLE violation). Counts six and seven allege violations of SCR 22.03(6)[8] (willfully failing to provide relevant information, to answer questions fully, or to furnish documents, or to misrepresent a disclosure, all during the course of an Office of Lawyer Regulation (OLR) investigation).

suspended under this rule to the clerk of the supreme court and to each judge of a court of record in this state. A lawyer shall not engage in the practice of law in Wisconsin while his or her state bar membership is suspended under this rule.

[7] SCR 20:8.4 provides: Misconduct.

It is professional misconduct for a lawyer to:

(a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;

(b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;

(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

(d) state or imply an ability to influence improperly a government agency or official;

(e) knowingly assist a judge or judicial officer in conduct that is a violation of applicable rules of judicial conduct or other law; or

(f) violate a statute, supreme court rule, supreme court order or supreme court decision regulating the conduct of lawyers; or

(g) violate the attorney's oath.

[8] SCR 22.03(6) provides: Investigation.

In the course of the investigation, the respondent's wilful failure to provide relevant information, to answer questions fully, or to furnish documents and the respondent's misrepresentation in a disclosure are misconduct, regardless of the merits of the matters asserted in the grievance.

¶ 6. After several notices to report CLE compliance went unanswered, the Board of Bar Examiners (BBE) sent Attorney Polich a notice of noncompliance via certified mail on April 7, 1997. This informed him he would be automatically suspended from the State Bar unless BBE received his completed compliance forms by June 3, 1997. Attorney Polich apparently had earned the necessary credits but had simply failed to report them. However, he never complied and on June 4, 1997, BBE sent him a notice of suspension via certified mail effective on that day. To date, Attorney Polich has never complied with the requirements for reinstatement.

¶ 7. Someone from Attorney Polich's office apparently knew that he was suspended because on March 22, 1999, one of his employees contacted BBE to inquire about the reinstatement process. That prompted another letter from BBE to Attorney Polich the next day reiterating that he had been suspended.

¶ 8. Despite being suspended, Attorney Polich appeared in Wisconsin courts in ten cases between 1998 and 2001. One of these involved representation of a defendant in a Forest County Circuit Court civil action and forms the basis for counts one and seven.

¶ 9. The defendant was served with the summons and complaint on June 15, 1998. Attorney Polich maintains that he had an oral agreement with the plaintiffs' original counsel that an answer did not have to be filed until some unspecified date in the future. However, Attorney Polich and his client had a parting of ways, apparently as the result of losing a temporary injunction proceeding on July 16. Attorney Polich claims he told his client to get new counsel but admits he never received confirmation that she indeed had done so until early September. Attorney Polich did not formally withdraw until September 10.

¶ 10. In the meantime, contrary to his alleged understanding with plaintiffs' counsel, who had now been succeeded by new counsel with whom Attorney Polich had no understanding, the answer was actually due on July 30. Attorney Polich did not meet that deadline but claimed that within a few days thereafter it became apparent to him that the substitution of counsel had not formally occurred and he needed to file the answer, which he did on August 10.

¶ 11. This untimely answer was later struck and default judgment was taken against Attorney Polich's former client which she unsuccessfully tried to vacate. Attorney Polich gave the client and her new attorney an affidavit to support the effort to vacate the default judgment in which he asserted he was a Wisconsin licensed attorney. The client later sued Attorney Polich for malpractice and he paid $50,000 to settle. It was during the course of this malpractice action in 2001 that Attorney Polich claims he first became aware that he had been suspended from the practice of law in 1997.

¶ 12. The referee found in favor of Attorney Polich on both of these counts.

¶ 13. Count one alleged a lack of diligence by Attorney Polich for missing the deadline to answer. The referee concluded that he had reason to believe that the deadline was actually longer than what was the case. The referee further concluded that the circumstances regarding the date when the answer really was due was "muddied" by the client trying to obtain new counsel around the time the answer was due. The referee stated:

> Polich had no reason to be confident in his status as [the client's] counsel . . . . His client was not communicating with him directly . . . . He had not been con-

273

tacted by successor counsel. He believed he had an agreement regarding an extension, but it was oral. . . . He may have believed that [the client] had replaced him . . . . Clearly, it would have been better for him, and his client, if such an [extension] agreement had been reduced to writing, . . . .

¶ 14. The referee was apparently influenced by the fact that Attorney Polich paid a substantial sum in settlement of the malpractice claim, which the referee concluded remedied any injury suffered by the client. Under these "ambiguous circumstances," the referee concluded there had been no violation of count one.

¶ 15. Count seven was a related allegation that Attorney Polich lied to the OLR concerning whether he represented this client as of July 30 when the answer was due. He had denied that he represented her at this time because it was his understanding that the client had obtained, or at least was trying to obtain, new counsel even though Attorney Polich never received a substitution of counsel.

¶ 16. The referee concluded that even though Attorney Polich had not yet formally withdrawn as the client's counsel at the time, he nonetheless could have legitimately believed that his services had been terminated. The referee concluded that Attorney Polich's statements to the OLR constituted "legitimate advocacy of an arguable legal position, to which reasonable persons could disagree" and could not be characterized as a misrepresentation.

¶ 17. Counts two, three and six relate to Attorney Polich's failure to file the necessary verification of his CLE credits.

¶ 18. Counts two and three, alleging intentional false statements, were resolved in favor of Attorney Polich. The referee accepted his defense that his office

administrative assistant had some mental impairment including memory lapses and failure to timely complete tasks. The referee also accepted his claim that he was personally unaware that his license had been suspended in 1997 until the malpractice action brought it to light in 2001 because the various notices and letters sent by BBE to his office were never brought to his personal attention.

¶ 19. The referee conceded that she was initially "highly skeptical" of this defense, particularly given that early in 2001 Polich had removed the statement "licensed in Wisconsin" from his letterhead. But she accepted his explanation that this change was simply due to a lawyer leaving his office and his decision to stop practicing in Wisconsin, rather than an admission that his license had been suspended. The referee noted there was no evidence from the OLR that anyone had personally communicated the suspension to Attorney Polich or had ever heard him make any admission against interest. The referee further noted that the client's new counsel in this case considered Attorney Polich's 2001 claim that this was the first he heard of the suspension to be truthful. The referee added:

> If Attorney Polich's only failure was to file a required form, and this fact came to his attention prior to the filing of the grievance, what possible incentive could he have for not correcting this error . . . I can think of no convincing explanation of his failure to fill out and mail a simple form other than the one he gave—that he thought it had been done.

¶ 20. Count six alleged that Attorney Polich had misrepresented to the OLR that he was unaware of his 1997 suspension. As with counts two and three, the referee concluded that OLR had not proved that Attorney Polich knew about the suspension prior to 2001.

Stating that the misrepresentation in SCR 22.03(6) requires deliberate behavior, the referee concluded there was no misconduct.

¶ 21. The only counts in which the OLR prevailed were four and five, both resolved by the referee on summary judgment prior to the hearing.

¶ 22. Count four alleged that Attorney Polich made a false and misleading communication about himself by using office letterhead in 1998 and thereafter that indicated that he was licensed to practice law in Wisconsin. The referee concluded that since Attorney Polich had clearly received notice of his suspension, even though he may not personally have been aware of it, the office letterhead was per se false and misleading.

¶ 23. Count five alleged that Attorney Polich improperly engaged in the practice of law during the period his license was suspended, which he conceded.

¶ 24. In support of the recommendation for a public reprimand for the violation of counts four and five, the referee referred to several cases in which either a private or public reprimand was given for a similar situation involving practice during a CLE suspension. The referee noted that the only case that apparently resulted in a suspension where practice during CLE noncompliance was present, *In re Disciplinary Proceedings Against Ditter,* 187 Wis. 2d 337, 523 N.W.2d 105 (1994), involved an attorney who intentionally refused to accept notices of suspension and who never had the requisite number of CLE credits. The referee further noted that there were other cases resulting in suspensions where practice during a CLE suspension was involved but all of those involved additional unrelated counts.

■

¶ 25. We adopt the findings of fact and conclusions of law of the referee with respect to all of these counts. Like the referee, we agree with the referee that portions of Attorney Polich's defense are susceptible to skepticism. However, the referee was best situated to judge his credibility and that of the other witnesses. There is no indication that the referee's findings of fact that support her conclusions of law are clearly erroneous.

¶ 26. We are troubled by Attorney Polich's repeated failures to comply with his CLE requirements. There is no excuse for an attorney to fail to comply with the simple reporting requirement, much less to do so three times. Further, his failure to assume personal responsibility for assuring that the most basic requirement for an attorney in this state is met—active State Bar membership—is inexcusable.

¶ 27. We are also concerned about Attorney Polich's representation of his client, which can be characterized as negligent, if not actually misconduct. The malpractice settlement he paid his client is ample warning of the cost of such negligence.

¶ 28. We conclude that the public reprimand recommended by the referee is appropriate discipline in this case.

■

¶ 29. However, we do not agree that the OLR's costs should be prorated to reflect that Attorney Polich prevailed on five of the seven counts against him. Although we have the discretion to apportion costs pursuant to SCR 22.24(1),[9] we have traditionally not done so. *See, e.g., In re Disciplinary Proceedings*

---

[9] SCR 22.24(1) provides: Assessment of costs.

*Against Pangman,* 216 Wis. 2d 440, 574 N.W.2d 232 (1998); *In re Disciplinary Proceedings Against Preloznik,* 169 Wis. 2d 137, 485 N.W.2d 249 (1992).

¶ 30. There is no indication that the costs incurred by the OLR in this matter were unreasonable and unnecessary. Nor is there any indication that the five counts on which Attorney Polich prevailed could reasonably be deemed to have been without prosecutorial merit. Accordingly, the circumstances before us do not warrant departure from the practice of assessing full costs against an attorney found to have engaged in at least some of the alleged professional misconduct.

¶ 31. IT IS ORDERED that Attorney Steve J. Polich is publicly remanded for his misconduct.

¶ 32. IT IS FURTHER ORDERED that within 60 days of the date of this order Attorney Steve J. Polich shall pay $17,498.87 to the OLR representing the costs of this proceeding. If these costs are not paid within the time specified, and absent a showing to this court of an inability to pay those costs within that time, the license of Attorney Polich to practice law in Wisconsin shall be suspended indefinitely until further order of the court.

¶ 33. SHIRLEY S. ABRAHAMSON, C.J. (*concurring*). My concurrence in *OLR v. Konnor,* 2005 WI 37, ¶¶ 37-92, 279 Wis. 2d 284, 694 N.W.2d 376, providing some context and perspective regarding costs in disciplinary proceedings, stands also as a concurrence in the present case.

---

(1) The supreme court may assess against the respondent all or a portion of the costs of a disciplinary proceeding in which misconduct is found, a medical incapacity proceeding in which it finds a medical incapacity, or a reinstatement proceeding and may enter a judgment for costs. The director may assess all or a portion of the costs of an investigation when discipline is imposed under SCR 22.09. Costs are payable to the office of lawyer regulation.

¶ 34. DAVID T. PROSSER, J. (*concurring in part, dissenting in part*). My concerns about the costs imposed in attorney discipline cases are set out in *OLR v. Konnor,* 2005 WI 37, 279 Wis. 2d 284, 694 N.W.2d 376, released today. Justice Butler has articulated his own concerns in this case. Although I do not fully subscribe to Justice Butler's methodology, I share many of his views and concur in his proposal to remand this case to the referee for an apportionment of costs.

¶ 35. LOUIS B. BUTLER, JR., J. (*concurring in part, dissenting in part*). I join the court's decision and order as to the discipline imposed in this action. While I may not have reached the same conclusion as the referee with respect to each of the violations alleged, the referee's determinations are not clearly erroneous. I write separately because I disagree with the court that full costs should be imposed in this case. I agree with the referee's recommendation that costs should be prorated, but would remand this matter to the referee to determine what costs would be appropriate.

¶ 36. Attorney Polich was charged with seven counts of attorney misconduct. We have concluded that there was sufficient evidence regarding two of those counts. Neither of those counts was litigated, as the finding in count four (making false and misleading communications) was established by summary judgment and Attorney Polich admitted the violation in count five (improperly practicing law while suspended). As far as the remaining five litigated claims are concerned, while the court agreed with the referee that portions of Attorney Polich's defenses are suspect (a viewpoint with which I concur), the court's per curiam opinion nevertheless adopted the referee's findings and conclusion that there was insufficient evidence to es-

tablish those counts. Thus, Attorney Polich prevailed on all counts that were tried at the hearing before the referee. In recommending that the costs be prorated, the referee opined that "clearly issues of fundamental fairness exist if the respondent is required to bear all of the costs of proceedings in which he fundamentally prevails." Per curiam op., ¶ 2. The court rejects this recommendation. *Id., ¶¶* 2, 29–30, 32.

¶ 37. While noting that we have the discretion to apportion costs pursuant to SCR 22.24(1), *see* per curiam op., ¶ 29, the court recognizes that we have traditionally not done so. *See, e.g., In re Disciplinary Proceedings Against Pangman ,* 216 Wis. 2d 440, 460, 574 N.W. 2d 232 (1998); *In re Disciplinary Proceedings Against Preloznik,* 169 Wis. 2d 137, 485 N.W. 2d 249 (1992). *See also, In re Disciplinary Proceedings Against Kalal,* 2002 WI 45, ¶ 33, 252 Wis. 2d 261, 278, 643 N.W.2d 466; and In re *Disciplinary Proceedings Against Johnson,* 165 Wis. 2d 14, 20, 477 N.W.2d 54 (1991). The court reasons that there was no indication that the costs incurred by the OLR were unreasonable and unnecessary. Per curiam op., ¶ 30. The court also notes that the five counts on which Attorney Polich prevailed had prosecutorial merit. *Id.* The per curiam opinion concludes that the circumstances in this case do not warrant departure from the practice of assessing full costs against an attorney found to have engaged in at least some of the alleged professional misconduct. *Id.* I respectfully disagree.

¶ 38. A review of the above cases suggests that the rule assessing full costs has been applied with little or no rationale. While this court certainly has the power to assess full costs even though an attorney has prevailed on some of the allegations, that does not mean that such a result is always right or just. I agree with the referee that issues of fundamental fairness exist if an attorney

is always required to bear all of the costs of proceedings in which he or she prevails. Thus, I conclude that it is appropriate to develop standards to guide us in determining when costs should be prorated in a given case. Nevertheless, I disagree that costs should automatically be prorated based on the number of counts that have been established.

¶ 39. The Seventh Circuit Court of Appeals has held that on the issue of allocation of costs in criminal prosecutions, the general rule is that costs associated *exclusively* with the unsuccessful prosecution of a defendant on specific counts may not be assessed against that defendant. *United States v. Pieper,* 854 F.2d 1020, 1027–28 (7th Cir. 1988). On the other hand, where evidence is introduced that relates to multiple counts, it may be proper to assess costs associated with the prosecution of both the successful and the related unsuccessful counts. *Id.*

¶ 40. Although *Pieper* does not involve a disciplinary proceeding and is not binding precedent from our court, I note that we have not established standards to guide us in applying SCR 22.24 (1). Consequently, I find *Pieper* to be persuasive in this matter, and would apply its logic to the facts of this case.

¶ 41. Attorney Polich committed two violations of professional misconduct. Three additional allegations (counts two, three, and six) were substantially related to those violations, and the evidence overlapped as to those counts. I therefore concur with the court's per curiam opinion that Attorney Polich should pay all costs associated with the prosecution of counts two through six.[1]

---

[1] I recognize that an argument could be made that Attorney Polich should be required to pay costs and fees only for the two

¶ 42. However, counts one and seven were unrelated to the other counts. Because there was insufficient evidence to support each of those counts, it is fundamentally unfair to assess costs associated with those counts against Attorney Polich. I would therefore remand this matter to the referee to apportion costs and assess them against Attorney Polich only with respect to counts two through six. Those costs should be apportioned based on the time and expenses reasonably necessary to prosecute each of those five counts by both OLR and the referee. Should it become impossible or impractical to calculate those costs, then the OLR costs and referee expenses should be mathematically prorated to reflect five out of seven counts; that is, five-sevenths of the OLR costs and referee expenses. In addition to those costs, though, I agree with the court that Attorney Polich must pay the entire court reporter fees.

¶ 43. Supreme Court Rule 22.24 (1) clearly establishes that this court has discretion to apportion costs in OLR proceedings. The fact that we have not established standards, guidelines, and procedures for when we exercise that discretion does not abdicate our responsibility to do so in cases like this where discretion is warranted. Accordingly, I would follow the rationale set forth in *Pieper* until we devise our own procedures.

¶ 44. I therefore respectfully dissent from that portion of the per curiam opinion that assesses full costs against the respondent. I concur with the remainder of the decision.

counts which were substantiated, particularly in view of the fact that respondent prevailed on all counts which were actually tried. I nevertheless favor the "substantially related" approach in this instance because I do not want to discourage the OLR from prosecuting allegations that are meritorious and substantially related to violations that have already been established.

¶ 45. I am authorized to state that Justices DAVID T. PROSSER and PATIENCE DRAKE ROGGENSACK join this opinion.