IN the MATTER OF DISCIPLINARY PROCEEDINGS AGAINST
Michael J. BACKES, Attorney at Law:

OFFICE OF LAWYER REGULATION, Complainant,

v.

Michael J. BACKES, Respondent.

Supreme Court

*No. 2002AP3238–D. Submitted on briefs December 14, 2004.
—Decided May 25, 2005.*

2005 WI 59

(Also reported in 697 N.W.2d 49.)

1

For the respondent there were briefs by *Michael J. Backes*, Milwaukee.

For the complainant there was a brief by *Gregg Herman, Matthew J. Price*, and *Loeb & Herman, S.C.*, Milwaukee.

¶ 1. PER CURIAM. Attorney Michael Backes seeks review of a report and recommendation filed by Referee Joan Kessler on or about October 2, 2003.[1]

¶ 2. Attorney Backes attended law school following a career in real estate. He was admitted to practice in Wisconsin in 1986. He has no prior disciplinary history.

¶ 3. On December 5, 2002, the Office of Lawyer Regulation (OLR) filed a complaint against Attorney Backes, alleging some 15 disciplinary violations stemming from five separate client matters.

---

[1] Attorney Backes' notice of appeal was untimely. The Office of Lawyer Regulation (OLR) moved to dismiss the entire appeal. This court acknowledged that the appeal was untimely but directed the parties to file briefs in the matter pursuant to SCR 22.17(2), which provides that "[i]f no appeal is filed timely . . . [t]he court, on its own motion, may order the parties to file briefs in the matter."

¶ 4. Attorney Backes filed a timely answer and the parties stipulated to two exhibits, which were admitted at the hearing before the referee, conducted on July 8 and 9, 2003. The first exhibit was entitled "Binding Stipulation as to Findings of Fact and Conclusions of Law." This constituted a "no contest plea" to the factual allegations and four violations charged in connection with one of the client matters which is referred to herein as "J.J." The parties also stipulated to a document entitled "Facts Admitted by Respondent . . ." that summarized the other facts admitted by Attorney Backes in connection with the other allegations made against him. The matter proceeded to a hearing before the referee.

¶ 5. Ultimately, the referee concluded that Attorney Backes had committed misconduct in connection with nine[2] of the 15 counts with which he was originally charged. He was cleared of six counts alleged in connection with two client matters. The referee recommended a public reprimand and restitution in the form of fee refunds to two clients. The referee recommended further that Attorney Backes pay the costs of the disciplinary proceeding.

¶ 6. Attorney Backes contends that a public reprimand is excessive discipline in view of the facts of this matter. He suggests that the recommended discipline was derived from considering all the charges against him and is no longer appropriate considering that the referee cleared him of the allegations made in connection with two client matters. Indeed, he points out that he was cleared of one of the most serious allegations, an alleged violation of SCR 20:8.4, which involves conduct

---

[2] These nine violations include the four counts to which Attorney Backes stipulated.

involving dishonesty, fraud, deceit or misrepresentation. He suggests further that the referee erred with respect to certain factual findings made in two client matters. He asserts that a private reprimand is sufficient discipline for his misconduct.

¶ 7. For clarity, the allegations against Attorney Backes will be discussed in connection with the client matters to which they relate.

## MATTER OF J.J.

¶ 8. Pursuant to the terms of the stipulation entered by the parties, Attorney Backes conceded he committed misconduct in this matter. As background, in 1994, the client, J.J., was convicted of one count of attempted first-degree murder and four counts of sexual assault. His conviction was affirmed on appeal.

¶ 9. In March 1998, J.J. contacted Attorney Backes about possible postconviction representation. He suggested he might be entitled to a new trial based on newly discovered evidence. Attorney Backes sent J.J. two letters, explaining first that he charged a flat fee, and later stating that fee would be $2500. On April 16, 1998, J.J. mailed Attorney Backes a check for $2500. There was no formal written fee agreement.

¶ 10. Attorney Backes visited J.J. in prison on June 26, 1998. At that meeting he stated that he would file a postconviction motion on J.J.'s behalf within 60 days of the meeting.

¶ 11. Despite several letters from Attorney Backes promising to take action in the near future, no pleading was ever filed on J.J.'s behalf. J.J. made several attempts to ascertain the status of the matter, including three attempts to terminate representation and obtain a refund of the retainer.

¶ 12. In May 2002, during the course of the ensuing grievance investigation, Attorney Backes did refund the full $2500 retainer to J.J.

¶ 13. The OLR alleged and Attorney Backes conceded that (1) by failing to file a postconviction motion or to conclude his review of J.J.'s file for more than 2½ years, Attorney Backes failed to act with reasonable diligence in representing J.J. in violation of SCR 20:1.3[3]; (2) by failing to respond to J.J.'s correspondence, Attorney Backes failed to keep J.J. reasonably informed about the status of a matter and promptly comply with reasonable requests for information in violation of SCR 20:1.4(a)[4]; (3) by failing to respond to J.J.'s specific inquiries about various postconviction relief issues, Attorney Backes failed to explain a matter to the extent reasonably necessary to permit J.J. to make informed decisions regarding the representation in violation of SCR 20:1.4(b)[5]; and (4) by failing until May 2002, to refund the $2500 fee that J.J. had paid, Attorney Backes failed, upon termination of representation, to refund an advance payment of fees that had not been earned in violation of SCR 20:1.16(d).[6]

---

[3] SCR 20:1.3 provides that "[a] lawyer shall act with reasonable diligence and promptness in representing a client."

[4] SCR 20:1.4(a) provides: "(a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information."

[5] SCR 20:1.4(b) provides: "(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation."

[6] SCR 20:1.16(d) provides:

> (d) Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and

6

## MATTER OF D.M.

¶ 14. Counts V through VIII of the complaint involved allegations of misconduct with respect to the matter of D.M. The referee concluded that Attorney Backes did not commit misconduct in his handling of the D.M. matter, and the OLR did not appeal that conclusion. Therefore, these facts and conclusions are not in dispute, but are discussed herein for reference because Attorney Backes contends this matter was wrongly considered by the referee in her decision to recommend a public reprimand.

¶ 15. D.M. was convicted of one count of second-degree sexual assault of a child in 1993. His motion for plea withdrawal was denied and the matter affirmed on appeal.

¶ 16. In May 1996, D.M. met with Thomas Russell, another lawyer at Backes' law firm, to discuss filing a possible postconviction motion. D.M. signed a fee agreement with this attorney.

¶ 17. A short time later, D.M. met with Attorney Backes and executed a new written fee agreement, for "post judgment matters" in which he agreed that the initial retainer would be $2500. The agreement provided: "This fee is a minimum and *non refundable* fee and is to be paid as follows: $1500.00 Down, Bal. 45 Days." The agreement goes on to discuss the possibility of a higher fee "if an appeal is required." D.M. paid Attorney Russell $1500 when he signed the fee agreement.

¶ 18. D.M. then "effectively disappeared." From May 1996 to May 1997, he neither initiated contact

property to which the client is entitled and refunding any advance payment of fee that has not been earned. The lawyer may retain papers relating to the client to the extent permitted by other law.

7

with Attorney Backes nor responded to Attorney Backes' attempts to contact him. In September 1997, D.M. "reappeared" and requested legal action from Attorney Backes on a matter apparently unrelated to the earlier fee agreement.

¶ 19. On September 18, 1997, Attorney Russell provided Attorney Backes with a written analysis of D.M.'s case, concluding that there was no good-faith basis upon which a postconviction motion could be filed. At this point, the $1000 balance on the fee agreement was still due and owing.

¶ 20. In October 1997, Attorney Backes wrote to D.M. and asked for the additional $1000 to proceed with the case. The complaint indicates that "[t]hereafter, for over a year [D.M.] was unable to obtain $1,000.00 to pay [Attorney Backes]." In December 1998, D.M. gave Attorney Backes $1000 to proceed.

¶ 21. In a letter dated January 18, 1999, after some additional review of the file, Attorney Backes informed D.M. that there were no grounds upon which to proceed with a postconviction motion. Correspondence between the two ensued. It appears that D.M. was unwilling to accept Attorney Backes' conclusion, and repeatedly insisted some motion be filed. Attorney Backes declined to file a motion and declined to refund the $1000 payment, asserting that this fee was earned.

¶ 22. On March 21, 2002, four months after D.M. filed a grievance against him, Attorney Backes refunded D.M. $1000.

¶ 23. The OLR complaint alleged that Attorney Backes' conduct with respect to the D.M. matter violated SCR 20:1.3 (reasonable diligence), SCR 20:1.4(b) (failure to adequately explain matter), SCR 20:1.16(d) (failure to refund unearned payment), and the most

8

serious charge levied against Attorney Backes, SCR 20:8.4(c) (conduct involving dishonesty, fraud, deceit or misrepresentation).

¶ 24. The referee, however, concluded that Attorney Backes did not commit misconduct with respect to his handling of the D.M. matter, noting that a fixed fee agreement is not a per se violation of rules of professional conduct, so long as the fee is reasonable in relation to the work performed. The referee observed that there was no evidence that the fee here was unreasonable. The referee noted further that there was no indication that D.M. objected to the delay or to the fee "until after he was told that . . . nothing could be done to reopen the case."

## MATTER OF C.D.

¶ 25. The referee also exonerated Attorney Backes from the OLR's charges against him in respect to the matter of C.D. The OLR does not appeal that conclusion. Therefore, again these findings and conclusions are not in dispute and are only summarized here for purposes of evaluating whether they were improperly considered in recommending discipline.

¶ 26. In November 1998, C.S. retained Attorney Backes to pursue a sentence modification motion for her fiancé, C.D., who had been incarcerated since 1991 following his conviction for armed robbery and threats to injure. C.S. paid Attorney Backes $1250 and agreed to pay him another $1250 within 30 days. There was no written fee agreement. C.S. duly paid the remaining $1250 on December 31, 1998. The premise of the requested motion was that C.D.'s parents were ailing and needed C.D. to care for them.

¶ 27. On February 24, 1999, Attorney Backes wrote to C.D. advising him that he had spoken to the

parents and had questions about whether the requested motion was appropriate. On March 9, 1999, Attorney Backes contacted C.D. to state that C.D.'s parents had informed him that they were not in ill health, and did not need C.D. to come home to care for them. He advised C.D. that there was thus no basis for filing a motion for sentence modification.

¶ 28. Over the following months, a series of correspondence ensued between C.D. and Attorney Backes, with C.D. demanding Attorney Backes either file a motion or refund $2000 of his fee, and Attorney Backes explaining he had earned his fee.

¶ 29. In October 1999, C.D. wrote to Attorney Backes, asking him to pursue whether a potential witness was available and stating that he had been assaulted by another inmate. Attorney Backes did contact C.D.'s former attorney regarding the potential witness, and on December 20, 1999, forwarded C.D. a letter from that attorney stating that the witness was not available. On January 5, 2000, C.D. was attacked by another inmate and seriously injured. In June 2000, another attorney represented C.D. in a sentence modification motion. The motion was denied.

¶ 30. The referee concluded that Attorney Backes had not committed misconduct with respect to his handling of the C.D. matter, noting that there was no evidence that a flat fee was unreasonable.

¶ 31. Attorney Backes agrees with this conclusion, but emphasizes that the injury C.D. sustained in the altercation with another inmate did not establish a basis for a sentence modification. We acknowledge the point, but conclude that the referee included these facts to establish the chronology; it was not the basis for the referee's decision, nor does it appear to have affected the referee's recommendation with respect to discipline.

¶ 32. The referee concluded that Attorney Backes committed misconduct in his handling of the matter of D.L.S. Attorney Backes challenges the referee's factual findings on several points.

¶ 33. On January 28, 2000, D.L.S. retained Attorney Backes to defend her son, M.L., against a charge of repeated acts of sexual assault against a child. D.L.S. signed a fee agreement in which she agreed to pay a flat, nonrefundable fee of $2500 to resolve the case short of trial.

¶ 34. On January 31, 2000, Attorney Backes met with M.L. in jail. M.L. requested that Attorney Backes file an immediate motion to reduce his bail. D.L.S. also asked Attorney Backes to file a motion to reduce her son's bail, explaining this was a high priority.

¶ 35. On February 25, 2000, Attorney Backes had not filed the requested motion, and D.L.S. discharged Attorney Backes, requesting an itemization and return of any unearned fees. On February 28, 2000, D.L.S. retained another attorney who promptly entered an appearance and moved for bail modification on March 7, 2000. The motion was granted the same day. M.L. was released on cash bond a few days later.

¶ 36. D.L.S. made two subsequent requests for a refund of unearned fees on March 29 and May 3, 2000. Although Attorney Backes admitted he had worked only five to seven hours on the matter, he did not send D.L.S. a refund until March 21, 2002, more than two years after he was discharged. The refund was in the amount of $1500, leaving a balance of $500 in dispute.

¶ 37. The parties disputed the reason Attorney Backes did not promptly file a motion for bail modifi-

cation. The referee made findings that Attorney Backes testified that he delayed bringing the motion because he thought the motion would require the support of the district attorney and he was trying to obtain that support, and because it was his understanding that his clients could raise no more than $5000 for bail.

¶ 38. On appeal, Attorney Backes challenges these findings. The record does reflect statements indicating that he thought the clients could only produce $2500 for bail. Bail was ultimately reduced to $5000, indicating it was reasonable for him to be concerned about the client's inability to raise more than $2500. Indeed, Attorney Backes implies that it would have been futile to bring a motion. He adds that he, in fact, had established the court date for the bail hearing although he concedes that he had not yet prepared a written bail motion.

¶ 39. Attorney Backes also challenges the referee's conclusion that he did not adequately communicate his strategic reasoning to the clients. He points to testimony elicited on cross-examination at the hearing in which the clients acknowledge that Attorney Backes did have discussions with them about various aspects of the case.

¶ 40. While there is record evidence of some misunderstanding as to the amount of money the client had available for bail, the record supports the referee's conclusion that the clients did not understand Attorney Backes' strategic decisions, nor did they believe that Attorney Backes had the matter in hand. M.L. wrote Attorney Backes several letters and D.L.S. telephoned Attorney Backes several times in an effort to obtain information about the status of the bail hearing, without receiving a response from Attorney Backes. Although Attorney Backes may indeed have intended to

raise the question of bail at a scheduled pretrial hearing, he never formally filed a motion for bail modification. And, it is undisputed that it took more than two years for Attorney Backes to refund even a portion of the retainer, despite his admission that he spent no more than five to seven hours on the client's file.

¶ 41. We are persuaded that the referee's conclusions that Attorney Backes failed to act with reasonable diligence and promptness in violation of SCR 20:1.3, and failed to timely refund an advance payment that had not been earned in violation of SCR 20:1.16(d) are supported by the record and are not clearly erroneous. We agree further with the referee's recommendation that Attorney Backes be required to refund D.L.S. the balance of the fee retainer in this matter.

## MATTER OF C.B.

■■

¶ 42. The referee concluded that Attorney Backes committed misconduct in his handling of the C.B. matter. Attorney Backes challenges the referee's factual findings on several points.

¶ 43. C.B. was convicted of first-degree intentional homicide, while armed, in 1993. In November 1999, C.B.'s mother and aunt retained Attorney Backes to file a motion for postconviction relief on behalf of C.B.

¶ 44. On C.B.'s behalf, a fee agreement was signed by his mother in which a nonrefundable fee of $2500 was to be paid. C.B.'s aunt paid $1500 on November 18th, and the remaining $1000 was paid 30 days later. The women understood that they were paying to bring the motion to court. They testified that they would

never have paid $2500 for an attorney to simply review C.B.'s case. Attorney Backes spoke with C.B. on January 17, 2000. On January 27, 2000, C.B. wrote to Attorney Backes with various suggestions and questions. Attorney Backes never responded to this letter and refused to accept C.B.'s telephone calls from prison. He also failed to return telephone calls from C.B.'s family members, and was repeatedly unavailable to meet with them, even when they went to his office seeking information about the status of C.B.'s case.

¶ 45. C.B. wrote to Attorney Backes again on April 20, 2000. Attorney Backes responded in writing on April 25, 2000, advising him that he had "reviewed the materials we have been sent and the input you have provided and have scheduled this matter for further review to determine what cause of action may have merit and how to bring it forward." The letter concluded: "I would certainly acknowledge that more time has passed on this than I would have liked, and we will proceed to re-review this matter and get back to you before too long."

¶ 46. On April 29, 2000, C.B.'s aunt wrote to Attorney Backes, stating she had reviewed his letter to C.B. and she was terminating Attorney Backes' representation. She requested a refund of the retainer and return of C.B.'s transcripts. Initially, Attorney Backes refused to refund any portion of the retainer, asserting that he had completed extensive document review in the matter. On March 21, 2002, Attorney Backes did refund the clients $2250 of the retainer, leaving a balance of $250 in dispute.

¶ 47. The OLR alleged and the referee concluded that by (1) not completing a review of C.B.'s case between November 19, 1999 and April 29, 2000, Attorney Backes failed to act with reasonable diligence in his

representation of C.B. in violation of SCR 20:1.3; (2) failing to respond to C.B.'s letter and the telephone calls from C.B. and his family members, Attorney Backes failed to keep his client reasonably informed about the status of a matter in violation of SCR 20.1.4(a); and (3) failing to return $2250 to C.B. until March 2002, Attorney Backes failed to timely return fees that had not been earned in violation of SCR 20:1.16(d). The referee recommended that Attorney Backes be required to refund the client the remainder of the retainer fee.

¶ 48. Attorney Backes challenges the referee's findings and conclusions of law regarding this matter. The referee stated that she found the witnesses in this matter "substantially believable." Attorney Backes vigorously disputes this finding, asserting that their testimony was "clearly exaggerated" and suggesting that the testimony of C.B.'s mother was "driven by her son's relentless prodding to obtain a refund of the entire legal fee after an excessive amount of work was completed, for purposes of retaining another attorney and getting another 'kick at the can.' " Attorney Backes concedes that he should have accepted the calls from C.B., but explains that his failure to do so was due to the mistaken belief that the telephone calls were collect calls.

¶ 49. He maintains he did work on the matter and cites as evidence the fact that C.B.'s mother "peeked" into his office in one of her attempts to contact him and saw for herself the transcripts stacked next to his desk. He adds that he testified that he performed work on the matter. Attorney Backes asserts that the referee's finding that "it does not appear that any significant work was done to review [C.B.'s] undoubtedly thick file" is in error.

15

¶ 50. We disagree. Attorney Backes was unable to produce documentation reflecting substantial work on the C.B. matter. He could only document having researched and copied two appellate decisions, and had no notes or other documentation to support his claim that he had reviewed voluminous transcripts. The referee was entitled to disbelieve Attorney Backes' assertions to the contrary. Similarly, there is no reason to disregard the referee's credibility determinations with respect to the witnesses in this matter. We recognize that Attorney Backes maintains that he earned the fee and returned it only to appease the OLR, however, absent documentary evidence of work performed on these files, we will not deem the referee's findings clearly erroneous.

¶ 51. Indeed, having reviewed the record in this matter we adopt the referee's findings of fact and conclusions of law and commend the referee for her detailed report and recommendation and careful citations to the record evidence. The few arguable discrepancies identified by Attorney Backes do not alter the conclusions we reach in this matter.

■

¶ 52. Turning to the question of the appropriate discipline, Attorney Backes points to statements by the OLR indicating it considered the alleged misconduct committed in the C.D. matter to be the most serious charge levied against Attorney Backes, as well as to statements indicating that it was the combination of incidents of alleged misconduct that warranted a public reprimand. Attorney Backes was, of course, absolved of the allegations of misconduct in the C.D. matter, and also in the D.M. matter.

16

¶ 53. In considering the appropriate discipline for professional misconduct, we consider a variety of factors, including the seriousness, nature and extent of the misconduct; the level of discipline needed to protect the public, the courts and the legal system from repetition of the lawyer's misconduct; the need to impress upon the attorney the seriousness of the misconduct; and the need to deter other attorneys from committing similar misconduct. *See In re Disciplinary Proceedings Against Charlton,* 174 Wis. 2d 844, 876, 498 N.W.2d 380 (1993).

¶ 54. We consider Attorney Backes' lack of previous discipline and the fact that he was cleared of several charges. We recognize his extensive cooperation with the OLR and his acknowledgement that he committed certain errors, and that a "lesson has been learned." We are mindful that he did return fees to clients.

¶ 55. However, we share the OLR's concern about "the distressing patterns of behavior . . . carried out against some of the most vulnerable and undereducated clients." Attorney Backes' repeated incidents of failure to proceed with reasonable diligence, failure to keep clients informed of the progress of their cases, and failure to return unearned fees owed to clients does constitute a pattern of conduct that warrants the imposition of public discipline.

¶ 56. Therefore, we adopt the report and recommendation. We order Attorney Backes to pay restitution in the form of a $250 fee refund to C.B., and a $500 fee refund to D.L.S., reflecting the unreimbursed portion of the $2000 fee retainer. In addition, we order Attorney Backes to pay the costs of the disciplinary proceeding.

¶ 57. IT IS ORDERED that Attorney Michael J. Backes is publicly reprimanded for professional misconduct.

17

¶ 58. IT IS FURTHER ORDERED that Attorney Michael J. Backes make restitution in the amount of $250 to C.B., and $500 to D.L.S.

¶ 59. IT IS FURTHER ORDERED that within 60 days of the date of this order Attorney Michael J. Backes pay to the Office of Lawyer Regulation the costs of this proceeding. If the costs are not paid within the time specified and absent a showing to this court of his inability to pay the costs within that time, the license of Attorney Michael J. Backes to practice law in Wisconsin shall remain suspended until further order of the court.

¶ 60. SHIRLEY S. ABRAHAMSON, C.J. (*concurring*). My concurrence in *In re Disciplinary Proceedings Against Konnor,* 2005 WI 37, 279 Wis. 2d 284, 694 N.W.2d 376, provides context and perspective regarding costs in disciplinary proceedings and also stands as a concurrence in the present case. *See also In re Disciplinary Proceedings Against Polich,* 2005 WI 36, 279 Wis. 2d 266, 694 N.W.2d 367 (Abrahamson, C.J., concurring).

¶ 61. Keith Sellen, Director of the Office of Lawyer Regulation, has filed an administrative rules petition proposing certain changes to the Supreme Court Rules relating to assessment of costs. The court will hear the petition in the fall of this year. *See* Rules Petition 05–01, *In the Matter of the Petition for Amendment to Supreme Court Rule 22.0001(3) Relating to Cost Assessments in the Lawyer Regulation System* (Jan. 18, 2005).

¶ 62. Until the court decides the petition, I would continue the court's practice of generally assessing full costs.

¶ 63. I am authorized to state that Justice N. PATRICK CROOKS joins this opinion.

¶ 64. ANN WALSH BRADLEY, J. (*concurring*). I have not yet written in what has become a continuing

discussion on the issue of imposition of costs in disciplinary cases. Much has been written and the topic has consumed, in my opinion, an undue amount of this court's time and resources.[1] A petition has been filed for the court to consider new guidelines and standards in the imposition of such costs.[2] Let us hear the petition, make changes to our current procedures as we deem necessary, and get on with the business of this court.

¶ 65. Both my life experience and my experience on this court impel me to the conclusion that we need uniform procedures and they need to be uniformly applied. Each case has its unique facts which result in differing levels of discipline. But no matter what the circumstances involved, the procedures should be the same.

¶ 66. The procedures and standards must apply equally regardless if the respondent is with a large firm or small firm, specialized practice or general practice, urban or rural. I believe it to be laudatory that the

---

[1] *See, e.g., OLR v. Trewin,* 2004 WI 116, 275 Wis. 2d 116, 684 N.W.2d 121; *OLR v. Polich,* 2005 WI 36, 279 Wis. 2d 266, 694 N.W.2d 367; *OLR v. Konnor,* 2005 WI 37, 279 Wis. 2d 284, 694 N.W.2d 376.

[2] Petition Number 05–01, In the Matter of the Petition For Amendment to Supreme Court Rule 22.001(3) Relating to Cost Assessments in the Lawyer Regulation System, filed by Keith Sellen, Director, Office of Lawyer Regulation. The petition requests that the court amend SCR 22.001(3) to define "costs" in the Lawyer Regulation System to include "the compensation and necessary expenses of referees [and] litigation expenses other than counsel fees of the office of lawyer regulation . . . ." As a result, counsel fees would not be assessed against the respondent in a disciplinary case, but would be absorbed by the Office of Lawyer Regulation's operating expenses, paid for by all of the members of the Bar.

dissent envisions new approaches and considers better ways of doing things. However, to apply a new standard in this case, which has not been applied in others, only because some justices have a new idea for a temporary standard, promotes instability and lack of uniformity in our procedures. It is also unfair to others who have not had the benefit of catching the attention and imagination that prompts this new stopgap approach.

¶ 67. Notably, this new approach will likely be more costly, which may exacerbate rather than minimize the concern regarding high costs advanced by the dissent. It will require a determination by a fact finder as to what is "substantially related." Although the dissent suggests that such a determination is "simple," I do not think so.

¶ 68. It may not be so simple to parse what part of trial preparation is attributed to which count. Likewise, in my experience, it may not be able to easily determine what fraction of the hearing before the referee or the oral argument in this court is as a result of what count. Are we to add the total minutes or hours of the proceeding, and then analyze the questions and answers to determine how each is to be allocated?

¶ 69. After we have a hearing on the newly filed petition and consider the positions advanced by those who appear, the court may well embrace the position set forth by the dissent. Or, it may consider an alternative. But whatever we do, we must be consistent in the application of our standards and procedures.

¶ 70. Let's have the hearing on the filed petition, decide it, and turn our attention to the many other pressing issues before this court.

¶ 71. I am authorized to state that CHIEF JUSTICE SHIRLEY S. ABRAHAMSON, JUSTICE JON P. WILCOX, and JUSTICE N. PATRICK CROOKS, join this concurrence.

¶ 72. LOUIS B. BUTLER, JR., J. (*concurring in part, dissenting in part*). I join the per curiam's decision and order as to the discipline imposed in this action. I write separately because I disagree with the court that full costs should be imposed in this case. Because Attorney Backes was absolved of any allegations of misconduct in both the C.D. and D.M. matters, I would not assess any costs for the counts associated with those complaints.

¶ 73. On December 5, 2002, Attorney Backes was charged with 15 disciplinary violations stemming from five separate client matters. Ultimately, the referee concluded that Attorney Backes had committed misconduct in connection with nine of the 15 counts concerning three separate client matters. We accept the referee's findings of fact and conclusions of law with respect to the disciplinary proceedings.[1] Those findings include a determination that Attorney Backes did not commit misconduct with respect to his handling of the D.M. matter contained in counts five through eight of the complaint,[2] and that he did not commit misconduct with respect to his handling of the C.D. matter contained in counts 11 and 12 of the complaint.[3]

¶ 74. Given our determination, we must now determine the appropriate discipline for the professional misconduct found. As the per curiam opinion indicates, we consider a variety of factors, including the serious-

[1] Per curiam op., ¶ 51.

[2] Per curiam op., ¶ 24.

[3] Per curiam op., ¶ 30.

ness, nature, and extent of the misconduct; the level of discipline needed to protect the public, the courts, and the legal system from repetition of the lawyer's misconduct; the need to impress upon the attorney the seriousness of the misconduct; and the need to deter other attorneys from committing similar misconduct. Per curiam op., ¶ 53. *See also Disciplinary Proceedings Against Charlton,* 174 Wis. 2d 844, 876, 498 N.W.2d 380 (1993). In considering these factors, the critical term used in the evaluation is "misconduct." Where no misconduct occurs, by definition nothing serious has happened. Where no misconduct occurs, the public, courts, and legal system are not in need of protection from its repetition. Where no misconduct occurs, there is no need to impress upon the attorney the seriousness of a nonexistent violation. Where no misconduct occurs, the need to deter other attorneys is absent.

¶ 75. We have determined that Attorney Backes has committed nine counts of misconduct against three different clients. Of course, he should be held responsible for the costs of the proceeding with respect to these counts, as well as the restitution ordered by the court. Per curiam op., ¶ 56. He did not commit any misconduct with respect to C.D. and D.M., however.

¶ 76. For the reasons stated in my concurring in part, dissenting in part opinion in *In re Disciplinary Proceedings Against Polich,* 2005 WI 36, ¶¶ 39–40, 279 Wis. 2d 266, 694 N.W.2d 367, I would adopt a "substantially related" approach to ordering costs in Office of Lawyer Regulations ("OLR") proceedings. In other words, where evidence is introduced that relates to multiple violations, I would assess costs associated with the prosecution of both the successful and the related unsuccessful counts. *See United States v. Pieper,* 854 F.2d 1020, 1027–28 (7th Cir. 1988). Costs should not be

assessed against an attorney in unrelated, unsuccessful counts where no misconduct has been found concerning a particular client. Such an assessment simply does not support the purposes underlying the factors we consider in determining the appropriate level of discipline where misconduct has occurred, but in unrelated matters.

¶ 77. I recognize that the "substantially related" approach that I would apply in this matter may not be a long-term solution as to how costs should be awarded in attorney-discipline cases. Supreme Court Rule 22.24 (1) establishes that this court has discretion to apportion costs in OLR proceedings. Until we establish standards, guidelines, and procedures for how to exercise our discretion, I propose the "substantially related" approach as a temporary measure so that we do not abdicate our responsibility to exercise our discretion in cases like this where discretion is warranted.[4] Accordingly, I would follow the rationale set forth in *Pieper* until we devise our own procedures.

---

[4] We agree with the concurrence that one way to handle the lack of standards for assessing costs is by rule petitions. Bradley, J., concurrence, ¶¶ 64, 70. Nevertheless, Supreme Court Rule 22.24 (1) unequivocally vests this court with discretion to apportion costs in OLR proceedings. "The fact that we have not established standards, guidelines, and procedures for when we exercise that discretion does not abdicate our responsibility to do so in cases like this where discretion is warranted." *In re Disciplinary Proceedings Against Polich,* 2005 WI 36, ¶ 43, 279 Wis. 2d 266, 694 N.W.2d 367 (Butler, J., dissenting).

The key word is "discretion." As this court reaffirmed just last term in *State v. Gallion,* 2004 WI 42, ¶ 3, 270 Wis. 2d 535, 678 N.W.2d 197, discretion is not synonymous with decision-making. The exercise of discretion " 'contemplates a process of reasoning.' " *Id.* (quoting *McCleary v. State,* 49 Wis. 2d 263, 280–81, 182 N.W.2d 512 (1971)).

¶ 78. Applying the "substantially related" test is simple in this case. I conclude that imposing costs on Attorney Backes regarding the allegations of misconduct with respect to handling C.D.'s and D.M.'s matters is not warranted. Attorney Backes was acquitted of all allegations of misconduct regarding these clients, and there is no basis upon which to conclude that these allegations were in any way, much less substantially, related to the misconduct that was established.

¶ 79. In view of his lack of prior discipline, his "extensive cooperation with the OLR," his acknowledgement that he committed certain errors, and the fact that he returned fees to clients,[5] imposing full costs on Attorney Backes is not justified. The factors we are to consider when imposing discipline simply do not warrant that result.

¶ 80. I therefore respectfully dissent from that portion of the per curiam opinion that assesses full costs against the respondent. I concur with the remainder of the decision.

¶ 81. I am authorized to state that Justice PATIENCE DRAKE ROGGENSACK joins this opinion.

---

[5] Per curiam op., ¶ 54.