IN THE MATTER OF DISCIPLINARY PROCEEDINGS AGAINST
Michael J. BACKES, Attorney at Law:

OFFICE OF LAWYER REGULATION, Complainant,

v.

Michael J. BACKES, Respondent.

Supreme Court

*No. 2004AP2093–D. Decided October 20, 2005.*

2005 WI 141

(Also reported in 705 N.W.2d 267.)

¶ 1. PER CURIAM. We review a report and recommendation filed by referee Rose Marie Baron on March 25, 2005, recommending that Attorney Michael J. Backes receive a public reprimand for professional misconduct committed in the course of his representation of F.M. in a postconviction criminal proceeding.[1]

¶ 2. Having independently reviewed the record we affirm the referee's factual findings, agree with her conclusion that Attorney Backes' conduct violated SCR §§ 20:1.3 and 20:8.4, and agree that a public reprimand

---

[1] On May 25, 2005, this court issued a per curiam decision, publicly reprimanding Attorney Michael Backes for professional misconduct in a separate matter. Shortly before that decision was mandated, Attorney Backes filed a motion to consolidate that disciplinary proceeding with this one. The motion was denied and, shortly thereafter, Attorney Backes voluntarily dismissed his appeal from the report and recommendation filed in this matter. Therefore, this matter is considered under SCR 22.17(2).

is appropriate discipline for this misconduct. We further agree that notwithstanding Attorney Backes' objection, he should be required to pay the costs of the Office of Lawyer Regulation (OLR) proceeding, which total $2163.10 as of June 2005.[2]

¶ 3. Attorney Backes was admitted to practice in Wisconsin in 1986, following a career in real estate. He was publicly reprimanded in 2005 for nine counts of misconduct committed in connection with three client matters. *See In re Disciplinary Proceedings Against Backes,* 2005 WI 59, 281 Wis. 2d 1, 697 N.W.2d 49.

¶ 4. The OLR filed this complaint against Attorney Backes on August 9, 2004, alleging two counts of misconduct allegedly committed in the course of Attorney Backes' representation of F.M. in a criminal postconviction matter. Attorney Backes admitted the majority of the factual allegations set forth in the complaint and the matter proceeded to a hearing before the referee on February 21, 2005, with the parties agreeing that the matter should be considered on submitted briefs and documents.

¶ 5. As the OLR complaint alleged, and the referee subsequently found, on July 1, 1998, F.M. was charged with one count of armed robbery and ultimately sentenced to 32 years in prison. His conviction was summarily affirmed. In April 2001 F.M. contacted Attorney Backes inquiring about the cost of postconviction representation.

¶ 6. On April 19, 2001, Attorney Backes notified F.M. in writing that his fee was $2500, half of which was due upon retainer and the balance due approximately 30 days later. He stated that his representation would

---

[2] Restitution was not recommended by the Office of Lawyer Regulation or the referee in this matter.

begin upon payment of the initial amount and that after review of relevant documents he would schedule a visit. In late June 2001 F.M.'s acquaintance, H.B., delivered the $2500 retainer to Attorney Backes on F.M.'s behalf.

¶ 7. Stated simply, Attorney Backes essentially took no action on F.M.'s case. Three times in early November 2001 F.M. wrote to Attorney Backes asking for a refund of his fee and for his file because nothing had been done on the matter. Attorney Backes responded in writing, claiming that he had reviewed the case. Attorney Backes did not terminate the representation, but instead scheduled a prison visit with F.M. that occurred on or about November 16, 2001.

¶ 8. In January 2002 F.M. wrote to Attorney Backes again, seeking an update on the status of his case. Attorney Backes did not respond. F.M. wrote to Attorney Backes again on February 14 and 17, 2002. Attorney Backes wrote to F.M. on or about February 22, 2002, but did not respond specifically to F.M.'s earlier inquiries. Rather, he stated that he would inform F.M. about the status of the case "shortly" and asked him to "hang in there until I get back to you so we know where we are at."

¶ 9. On May 12, 2002, F.M. requested a copy of the document to be filed on his behalf, and asked Attorney Backes to "stop dragging me along." On May 14, 2002, Attorney Backes wrote to F.M. and informed him that the matter would be proceeding.

¶ 10. On August 11, 2002, F.M. again sought a status update. Attorney Backes responded on August 28, 2002, explaining that he had been involved in a trial and other matters but that he should be able to move forward with F.M.'s case in the near future.

¶ 11. On October 9, 2002, F.M. requested a refund of the fees he had paid and directed Attorney Backes to

stop work on his file. On November 5, 2002, Attorney Backes responded that he had completed his work on F.M.'s case, and that he would be in touch shortly. On November 18, 2002, Attorney Backes wrote to F.M. again, advising him that he would file a petition for writ of habeas corpus in the court of appeals pursuant to *State v. Knight,* 168 Wis. 2d 509, 484 N.W.2d 540 (1992) (a *"Knight* petition") adding: "I have prepared that petition for filing."

¶ 12. After the grievance in this matter was filed, representatives from the OLR requested a copy of this *Knight* petition. Attorney Backes then stated that "[t]here was no 'final typing' of a *Knight* petition, but rather an initial basis for a *Knight* was known, although I had hoped it would be expanded upon." Attorney Backes later stated to investigators that "[t]he final petition was not drafted or forwarded to [F.M.] because of difficulties which then took place as to a refund of legal fees, and it appeared that, in fact, the professional relationship with [F.M.] was, in fact, at an end."

¶ 13. In November 2002 F.M. filed a pro se motion for postconviction relief. On December 13, 2002, he filed a pro se motion for reconsideration. Both were denied.

¶ 14. On November 22, 2002, Attorney Backes wrote to F.M. after a telephone conversation the previous day, saying he would send F.M.'s file and a partial refund of the legal fee. Attorney Backes did return F.M.'s file on November 27, 2002. On December 2, 2002, Attorney Backes advised F.M. in writing that because a third party had paid the initial retainer, Attorney Backes had to return any fees to that third party. He explained that his written attempt to reach H.B. had been returned to sender with no forwarding address.

¶ 15. On December 18, 2002, F.M. wrote to Attorney Backes, again requesting the refund and stating

that he did not know H.B.'s whereabouts. On December 30, 2002, Attorney Backes consulted with the State Bar Ethics Committee seeking guidance on how to handle the refund.[3]

¶ 16. On March 3, 2003, F.M., who had still not received any refund, sent Attorney Backes a letter stating that he wanted to reinstate Attorney Backes as his attorney and asked him to file the *Knight* petition. On May 9, 2003, F.M. sent Attorney Backes yet another letter, this time demanding return of the fee and a copy of the *Knight* petition so he could file it himself. F.M. filed a grievance against Attorney Backes with the OLR on May 22, 2003.

¶ 17. On June 3, 2003, Attorney Backes wrote to F.M. asking him to have H.B. contact him claiming that he was "proceeding" and would get back to him. On June 11, 2003, Attorney Backes wrote to F.M. again, this time addressing the merits of the case. On June 18, 2003, F.M. responded asking again that his file and fee be returned to him. On July 2, 2003, Attorney Backes responded reiterating that he had been retained by H.B. and remained unable to locate him.

¶ 18. Attorney Backes submitted his response to F.M.'s grievance on September 25, 2003. He explained the length of time it took him to address F.M.'s case, as follows:

> I have reviewed [F.M.'s] case and initially identified problems that existed. I did not bring the matter forward, at that time, in that I felt there were problems with it, and I, as is my practice, set the matter aside and

---

[3] Backes later stated that he received a letter on January 7, 2003, indicating that the request for an ethics opinion would be brought to the committee at its January meeting, but that he never received an opinion regarding his inquiry.

intended to re-review it further. The term 'progressing' is a process which I have found has generated results in previous matters, that is when there is no immediate and clear path of action in which I have confidence.

I had previously explained to [F.M.] that this process is such that there is no guarantee of a result, but, certainly, I will review and re-review matters, a process which, on occasion, involves general brainstorming with other [attorneys], seminars, etc., which sometimes generates further ideas.

I believe that this process is best and that is why the time involved sometimes, depending on other caseload, does extend into a lengthy period of time.

I believe that, in my communications with [F.M.], both verbal and written, the process was explained and that he would need to be patient, given his sentence, given his situation, and given the facts that pertain to his case. I would represent that, if there was clear error which was overlooked by appellate counsel, that matter would have then been brought forward at that time.

¶ 19. On October 8, 2003, F.M. sent both the OLR and Attorney Backes copies of a *Knight* petition that he had filed, pro se, with the Wisconsin Court of Appeals. F.M. suggested resolving his fee dispute with Attorney Backes by having Backes commit to helping him with further action if his pro se filing was denied. F.M. stated that he believed that Attorney Backes had not earned the $2500 he had been paid.

¶ 20. On October 21, 2003, Attorney Backes informed the OLR that he had sent F.M. copies of *Rothering v. McCaughtry*, 205 Wis. 2d 675, 556 N.W.2d 136 (Ct. App. 1996), a court of appeals' decision, together with references to transcripts. He indicated that he was prepared to intervene at this point should F.M. desire his assistance. On the same date, October 21, 2003, F.M.

wrote to the OLR expressing his desire for a refund of the $2500 fee he paid Attorney Backes.

¶ 21. On November 6, 2003, F.M. wrote to Attorney Backes informing him that the Wisconsin Court of Appeals had denied his pro se appeal and asked for assistance or a return of the $2500 fee. On November 10, 2003, Attorney Backes wrote to F.M. stating that F.M. had no legitimate grounds to seek review in the Wisconsin Supreme Court, and stating that he had earned the $2500 fee.

■

¶ 22. The disciplinary complaint filed against Attorney Backes alleged that Attorney Backes violated SCR 20:1.3, which provides that "[a] lawyer shall act with reasonable diligence and promptness in representing a client." Initially, Attorney Backes challenged this allegation, asserting that he had conducted himself in a professional and proper manner in all respects.

¶ 23. The referee disagreed. As she observed, F.M. first contacted Attorney Backes in April 2001. In June, Attorney Backes received $2500 to conduct a postconviction review of F.M.'s case. Attorney Backes continued to represent F.M. despite a November 2001 letter, seeking to terminate the representation. In September 2002 F.M. again attempted to terminate Attorney Backes' representation and requested a refund of fees paid. At that time, Attorney Backes informed F.M. that he had completed the work on his case and would be contacting him shortly. Attorney Backes then told F.M. he would be filing a *Knight* petition and stated further that he had prepared the petition for filing. The referee found that this was untrue. F.M. eventually had to file his petition pro se.

¶ 24. At the disciplinary hearing conducted on this matter, Attorney Backes acknowledged that "too much time went past" but he sought to explain this, as follows:

[F.M.] is a very abrasive person sitting on a 32 year prison sentence. It's not, I mean, there was a desire on my part to earn my fee and he had pled guilty and was expecting a prison sentence of something under ten years. So I mean, it[']s not like this is something here with an immediate fire underneath it, that he's being held in prison and if it wasn't for this he would be released. I mean, he was just sentenced to a longer prison sentence as compared to a long prison sentence for a very serious crime and certainly had there been a mistake that he was convicted at trial and that this mistake would grant him a new trial or whatever, that puts things in a different light and he understood that. You know, he understood that he was facing this time.

So I take some exception in viewing that differently than one where you have some immediate action that is going to result in some dramatic change or releasing a man from prison or something of that kind. This was not the case here.

¶ 25. In considering this matter the referee acknowledged Attorney Backes' testimony that F.M. was a difficult client. However, the referee agreed with counsel for the OLR who noted that "once you agree to represent someone and accept the fee, you assume all the responsibilities toward that client set forth in the Supreme Court rules." The referee was not persuaded by the reasons that Attorney Backes proffered for needing to review and re-review F.M.'s case file and ultimately concluded that Attorney Backes' timetable and strategies were "inappropriate" and did not "reflect reasonable diligence and promptness in representing a

client." Thus, the referee concluded that Attorney Backes violated SCR 20:1.3. Based on our own review of this record we agree with this conclusion.

¶ 26. The complaint also alleged, and the referee concluded that Attorney Backes violated SCR 20:8.4(c), which provides that it is professional misconduct for a lawyer to "engage in conduct involving dishonesty, fraud, deceit or misrepresentation." Specifically, the OLR complaint alleged that "[o]n November 18, 2002, Backes wrote to [F.M.], 'I have firmly reached the conclusion that the only course of action available to you is a *Knight* petition, and I have prepared that petition for filing.'" Later, when asked to produce this draft, Attorney Backes stated:

> There was no 'final typing' of a *Knight* petition, but rather an initial basis for a *Knight* was known, although I had hoped it would be expanded upon.
>
> . . . .
>
> The final petition was not drafted or forwarded to [F.M.] because of difficulties which then took place as to a refund of legal fees, and it appeared that, in fact, the professional relationship with [F.M.] was, in fact, at an end.

Attorney Backes disagreed that this incident constituted a violation of SCR 20:8.4(c), explaining:

> In my view the [*Knight*] petition was completed. I mean, you know, I had all the facts together. I mean, it's all there, I got it all down. And the term filing is just a term that I used in the letter to [F.M.] that I certainly wish I had not because it implies like taking it getting the file stamp. But that was not my intent to portray that. So that was a mistake in terminology I think more than anything. There was going back and forth on this

but there was problems with it. I did believe that it would fail. If there was going to be anything that could succeed it would be the *Knight* petition.

¶ 27. The referee stated that she could not reconcile Attorney Backes' explanations to the OLR stating that "[t]here was no 'final typing' of a *Knight* petition" and his explanation that "[t]he final petition was not drafted or forwarded to [F.M.] because of problems with a refund of fees" and Attorney Backes' testimony at the hearing, cited above. She thus concluded that Attorney Backes had misrepresented the status of the *Knight* petition to his client, thereby engaging in conduct involving dishonesty, deceit, and misrepresentation in violation of SCR 20:8.4(c). We agree that the record supports this conclusion of law.

■

¶ 28. We consider the appropriate discipline for Attorney Backes' misconduct. The referee recommended Attorney Backes receive a public reprimand, together with an order to pay the costs of this proceeding. We agree that a public reprimand is appropriate discipline for Attorney Backes' misconduct in this matter. We further agree that he should be required to pay the costs of this proceeding.[4]

¶ 29. IT IS ORDERED that Attorney Michael J. Backes is publicly reprimanded for professional misconduct.

¶ 30. IT IS FURTHER ORDERED that within 60 days of the date of this order Attorney Michael J.

---

[4] We note that on July 1, 2005, Backes filed an objection to the assessment of costs submitted by the OLR, deeming them "excessive" for a voluntarily dismissed appeal. However, he did not further challenge those costs with specificity and we deem his objection denied.

Backes pay to the Office of Lawyer Regulation the costs of this proceeding. If the costs are not paid within the time specified and absent a showing to this court of his inability to pay the costs within that time, the license of Attorney Michael J. Backes to practice law in Wisconsin shall be suspended until further order of the court.