In the Matter of Disciplinary Proceedings Against Richard J. Krueger, Attorney at Law:

Office of Lawyer Regulation,
Complainant-Respondent,

v.

Richard J. Krueger, Respondent-Appellant.

Supreme Court

*No. 2003AP2558–D. Submitted on briefs October 12, 2005.
—Decided February 22, 2006.*

2006 WI 17

(Also reported in 709 N.W.2d 857.)

For the respondent-appellant there were briefs by *Robert N. Duimstra* and *Menn, Teetaert & Beisenstein, Ltd.*, Appleton.

For the complainant-respondent there was a brief by *Richard P. Mozinski, Donald J. Chewning* and *Radosevich, Mozinski, Cashman & Olson, LLP*, Manitowoc.

¶ 1. PER CURIAM. Attorney Richard J. Krueger has appealed from a referee's report concluding that he engaged in professional misconduct and recommend-

ing that his license to practice law in Wisconsin be suspended for a period of 60 days.

¶ 2. We conclude that the referee's findings of fact are supported by satisfactory and convincing evidence. We further determine that the seriousness of Attorney Krueger's misconduct warrants the suspension of his license to practice law for a period of 60 days. We also agree with the referee that the costs of the proceeding, which are $20,489.37, should be assessed against Attorney Krueger.

¶ 3. Attorney Krueger was admitted to practice law in Wisconsin in 1956 and now practices part-time in Oconto. He has not previously been the subject of a disciplinary action.

¶ 4. In September 2003 the Office of Lawyer Regulation (OLR) filed a complaint alleging that Attorney Krueger engaged in misconduct with respect to his representation of F.S. Attorney Krueger had represented F.S. in various legal matters beginning in 1960. In 1999, when the pertinent conduct occurred, F.S. was 82 years old.

¶ 5. In June 1999 F.S. experienced financial problems and asked Attorney Krueger to file a Chapter 7 bankruptcy petition on his behalf. Attorney Krueger filed a Chapter 7 petition for F.S. on June 14, 1999. As of that date Attorney Krueger's records indicated that F.S. owed him $7384.15.

¶ 6. The bankruptcy schedules prepared for F.S. by Attorney Krueger showed that F.S. had $70,961 in assets and $372,390 in debts, of which $220,232 constituted secured claims. F.S.'s debt to Attorney Krueger for attorney's fees in the amount of $7384.15 was not disclosed anywhere in the bankruptcy petition or the related schedules of creditors. The schedules to the bankruptcy petition did indicate that Attorney Krueger

received $1000 for the bankruptcy work and debt counseling and that he would receive an additional $800 for bankruptcy representation prior to filing the required disclosure of attorney compensation which is a requirement under bankruptcy law. Prior to filing F.S.'s bankruptcy petition, Attorney Krueger estimated he had handled about 100 other Chapter 7 bankruptcy petitions.

¶ 7. Prior to filing F.S.'s bankruptcy petition, Attorney Krueger and F.S. discussed the $7384 debt owed to Attorney Krueger. Attorney Krueger said he told F.S., "[m]aybe it's better you get yourself another lawyer to do this because of this apparent possibility of a conflict." Attorney Krueger said F.S. insisted that Attorney Krueger continue to represent him. Attorney Krueger admits that F.S. did not sign a written consent waiving the conflict.

¶ 8. After the bankruptcy petition was filed, F.S. and Attorney Krueger attended a first meeting of creditors. At the hearing, the bankruptcy trustee, in Attorney Krueger's presence, asked F.S. if he had listed all of his debts on the bankruptcy schedules. F.S. said he had. Attorney Krueger did not say anything to the bankruptcy trustee with respect to the money F.S. owed him. F.S. received a discharge from the bankruptcy court in October 1999. At the time of the discharge, three adversary proceedings had been filed by secured creditors, and Attorney Krueger represented F.S. in those proceedings. As of February 16, 2000, F.S. owed Attorney Krueger about $12,000, of which $7384.15 was for the pre-bankruptcy legal work and the rest was for post-bankruptcy work relating to the three adversary proceedings.

¶ 9. On February 16, 2000, Attorney Krueger received $40,000 from F.S. At that time, Attorney Krueger

was negotiating with counsel for two secured creditors of F.S. and offered to settle those cases for 60 percent of the amount owed to each creditor. Attorney Krueger told counsel for those creditors that there was no additional money available for settlement. Attorney Krueger deposited $28,000 of the $40,000 into his client trust account and applied the remaining $12,000 to his own fees, which included the pre-bankruptcy charges of $7384.15.

¶ 10.   In the process of settling the claims with the secured creditors, Attorney Krueger paid the creditors from his trust account. In making the disbursements, Attorney Krueger made a math error, leading him to believe the trust account was $500 short. He deposited $500 of his own money into the trust account and added $500 to the F.S. ledger. Attorney Krueger later discovered the math error, withdrew the $500 from his trust account, but continued to bill F.S. for the $500. In December 2000 Attorney Krueger's records showed that F.S. owed Attorney Krueger $6856, which included the $500 math error.

¶ 11.   In April 2001 F.S.'s daughter, M.F., contacted Attorney Krueger to discuss the homestead exemption F.S. had claimed in his bankruptcy petition. M.F. informed Attorney Krueger that she was now acting for her father under a power of attorney. During a phone conversation with M.F., Attorney Krueger told her that F.S. owed Attorney Krueger over $6000 and he demanded payment. M.F. requested her father's files. Attorney Krueger refused to turn over the files unless he was paid. M.F. filed a grievance against Attorney Krueger with the OLR in May 2001.

¶ 12.   In July 2001 after Attorney Krueger had been informed that M.F. had filed a grievance, Attorney Krueger filed a small claims action against F.S. for

$5000. A default judgment was entered in November 2001. Attorney Krueger filed a transcript of the judgment in Marinette County in an attempt to place a judgment lien on real estate F.S. had claimed as exempt as his homestead in the bankruptcy proceeding. In September 2002 Attorney Krueger filed an action to require a sheriff's sale to collect on the judgment lien. M.F. and F.S.'s son, J.S., both of whom claimed an interest in the Marinette County property, were named as defendants in the action.

¶ 13. In October 2002 Attorney Lawrence Vesely, while representing M.F. and J.S., entered into a settlement agreement with Attorney Krueger which stopped the pending sheriff's sale. There was a discussion about the defendant's paying Attorney Krueger $2500 in return for which M.F. would withdraw her grievance. M.F. subsequently informed the OLR that she wanted to withdraw the grievance she had filed against Attorney Krueger. The OLR refused to do so and told Attorney Krueger it would continue with its investigation.

¶ 14. As part of the OLR's investigation, Attorney Krueger was requested to tell the OLR what amount of money was owed to him by F.S. before the bankruptcy action was filed. On August 13, 2001, Attorney Krueger wrote to the OLR and advised him that the amount was less than $500. When OLR staff asked about the apparent discrepancy between this statement and the figures shown on Attorney Krueger's ledger for F.S., Attorney Krueger acknowledged that at the time the bankruptcy petition was filed F.S. actually owed him over $7300.

¶ 15. The OLR's complaint alleged the following counts of misconduct:

(1) By representing a client in a Chapter 7 bankruptcy action while the client was indebted to the

attorney for over $7,000 in unpaid legal fees, and thereafter negotiating for the client regarding the compromise of non-discharged debts at the same time as funds acquired by the client after the bankruptcy were used to pay respondent's own fees in full, without obtaining written consent from his client to the potential conflict of interest, respondent violated SCR 20:1.7(b).[1]

(2) By preparing bankruptcy schedules for a client that intentionally omitted respondent's own attorney fee debt, by failing to disclose to the bankruptcy trustee the client's payment of respondent's own fees in preference to the client's debts to other creditors, and by collecting on the debt after it would have been discharged in bankruptcy, respondent engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation, contrary to SCR 20:8.4(c).[2]

(3) By making misrepresentations to OLR staff about the amount of a client's indebtedness to respondent at the time of the client's bankruptcy action, and

---

[1] SCR 20:1.7(b) provides: Conflict of interest: general rule.

(b) A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:

(1) the lawyer reasonably believes the representation will not be adversely affected; and

(2) the client consents in writing after consultation. When representation of multiple clients in a single matter is undertaken, the consultation shall include explanation of the implications of the common representation and the advantages and risks involved.

[2] SCR 20:8.4(c) provides it is professional misconduct for a lawyer to "engage in conduct involving dishonesty, fraud, deceit or misrepresentation."

by misrepresenting to OLR that the debt had never been satisfied, respondent violated SCR 22.03(6).[3]

¶ 16. Konrad Tuchscherer was appointed referee in the matter. A two-day hearing was held in July 2004. The parties submitted a stipulation as to certain findings of fact in which Attorney Krueger admitted the vast majority of the allegations in the OLR's complaint. The referee issued a report on September 30, 2004, finding that the OLR had met its burden of proof with respect to the three counts of misconduct alleged in the complaint.

¶ 17. The referee found that Attorney Krueger's representation of F.S. in the Chapter 7 bankruptcy action at a time when F.S. owed Attorney Krueger in excess of $7000 in unpaid legal fees constituted a conflict of interest in that F.S.'s representation by Attorney Krueger was materially limited by Attorney Krueger's responsibilities to other creditors as well as by Attorney Krueger's own interest in being paid a discharged debt. The referee also found that Attorney Krueger failed to obtain F.S.'s consent to the conflict in writing as required by SCR 20:1.7(b).

¶ 18. The referee also concluded that failing to disclose the pre-bankruptcy debt F.S. owed to Attorney Krueger in the bankruptcy petition, failing to advise the bankruptcy trustee that F.S.'s testimony was not accurate in that the pre-bankruptcy debt owed by F.S. to Attorney Krueger was not included, and depositing

---

[3] SCR 22.03(6) provides that "[i]n the course of the investigation, the respondent's wilful failure to provide relevant information, to answer questions fully, or to furnish documents and the respondent's misrepresentation in a disclosure are misconduct, regardless of the merits of the matters asserted in the grievance."

$12,000 of the $40,000 received from F.S. in Attorney Krueger's account constituted dishonesty, fraud, deceit and misrepresentation in violation of SCR 20:8.4(c).

¶ 19. The referee noted that 11 U.S.C. § 521(1) and Federal Bankruptcy Rule 1007 impose a duty on a debtor for full disclosure of all creditors, and bankruptcy law requires the debtor to sign the bankruptcy petition under penalty of perjury. The referee also noted that the attorney preparing the bankruptcy petition is required to sign the petition, although without such sanction. The referee concluded that by signing F.S.'s bankruptcy petition Attorney Krueger verified to the bankruptcy court that the allegations or other factual contentions in the petition had evidentiary support. The referee also concluded that by applying over $7000 of the $40,000 check received from F.S. in payment of pre-bankruptcy attorney's fees, Attorney Krueger collected a discharged debt in violation of 11 U.S.C. § 524(a)(2). The referee also concluded that Attorney Krueger's collection of pre-bankruptcy debt was not part of a voluntary repayment by F.S. of a discharged debt since the debt collection was part of an arrangement Attorney Krueger had with F.S. before filing the bankruptcy petition. Finally, the referee concluded that Attorney Krueger's letter to the OLR saying F.S. had owed him less than $500 at the time the bankruptcy was filed was a misrepresentation in violation of SCR 22.03(6).

¶ 20. In discussing the appropriate discipline to be imposed for the three counts of misconduct, the referee noted that the OLR's complaint was heavily contested at trial by Attorney Krueger and central to the case was Attorney Krueger's state of mind and whether he perceived his pre-bankruptcy claim against F.S. as a conflict of interest; whether he intentionally

omitted the debt on the bankruptcy schedules; whether he attempted to collect a discharged debt post-bankruptcy; and whether he intended to mislead the OLR into believing there was very little pre-bankruptcy debt and that it was never paid.

¶ 21. The referee noted that F.S. was "[c]onspicuously absent from the cast of witnesses at the hearing." The referee noted there was testimony that F.S. had been found incompetent for purposes of a criminal proceeding that had been brought against him. The referee said F.S.'s testimony, if competent, would have been helpful in determining whether the payment of the pre-bankruptcy debt was voluntary. Even though F.S. was not present at the hearing, the referee noted that Attorney Krueger admitted he had an outstanding arrangement with F.S. which provided that when F.S. came into possession of funds after the bankruptcy discharge, those funds would be paid to Attorney Krueger to cover the pre-bankruptcy debt. The referee further noted that after being paid for the pre-bankruptcy debt, Attorney Krueger pursued a small claims action against F.S. for additional post-bankruptcy services, which illustrated his propensity to enforce all debts, discharged or otherwise.

¶ 22. The referee noted that this court has held that under SCR 20:1.7(b):

> [I]t is mandatory to proceed with consultation and a written conflict waiver even when the lawyer believes the representation *may* be adversely affected. It is not the state of mind of the Respondent that should be examined, it is the likelihood of adverse affects, there being no particular degree of likelihood necessary. See, *In Re: Disciplinary Proceedings Against Michael Trewin*, 2004 WI 116, [275 Wis. 2d 116,] 684 N.W.2d 121 (2004).

¶ 23. The referee noted that the OLR had recommended a six-month suspension of Attorney Krueger's license, and that Attorney Krueger sought dismissal of the complaint, claiming no violations of supreme court rules occurred. The referee also noted that at the time of the hearing Attorney Krueger was 72 years old and occupied emeritus status with the state bar and that his practice had been winding down for a number of years and was non-existent in the winter when he and his wife reside in Arizona. In addition, the referee noted that in his 48 years of practice, Attorney Krueger had a clean record with the OLR and its predecessor, the Board of Attorneys Professional Responsibility (BAPR) and he had served for many years on a district committee of the BAPR. The referee also noted that Attorney Krueger had been involved in the community and his church and a local circuit court judge, who was subpoenaed to testify at the hearing, spoke highly of his past practices.

¶ 24. The referee concluded that a six-month suspension of Attorney Krueger's license would work an undue hardship and instead recommended that Attorney Krueger's license be suspended for 60 days and that he pay the costs of the proceeding.

¶ 25. Attorney Krueger appealed, arguing that the OLR failed to demonstrate by clear, satisfactory and convincing evidence that any misconduct occurred. Attorney Krueger argues that the OLR failed to call its most critical witness, F.S., and he asserts that his conduct in representing F.S. cannot be judged fairly without testimony directly from F.S. In addition, Attorney Krueger argues there was no conflict of interest with respect to his representation of F.S. in the bankruptcy case. He asserts that a bankruptcy is not true litigation and he further contends that his duty of loyalty to F.S., built over 40 years, was not affected simply because F.S. owed

597

him money. He also asserts that because he allowed a discharge of his bill without participating as an unsecured creditor in the bankruptcy proceeding, there was less debt to be paid and more assets available to settle other creditors' claims and if anyone should have been prejudiced by the representation, it was Attorney Krueger, because his fees were discharged and he had no further right to a recovery.

¶ 26.   Attorney Krueger says that unlike the situation in *Trewin,* he did discuss the unpaid fees with F.S. before F.S. insisted that Attorney Krueger continue to represent him. He also asserts that, unlike the *Trewin* case, Attorney Krueger's representation of F.S. was not materially limited by his own adverse interest, but rather benefited his client and involved no possible prejudice to his client's interests.

¶ 27.   Attorney Krueger argues that failing to list the debt for his attorney's fees on the bankruptcy schedules was not an act of fraud, deceit, dishonesty or misrepresentation, and he contends it was F.S.'s decision not to list the debt on the bankruptcy schedules. He also argues that the OLR failed to prove that F.S.'s payment after the bankruptcy was anything but voluntary. Finally, Attorney Krueger asserts that he made no misrepresentation to the OLR. Although he admits that the information he provided to the OLR regarding the amount of fees owed by F.S. at the time of the bankruptcy filing "was not totally free from error," he contends that his inadvertent mistakes did not rise to the level of constituting a misrepresentation intended to deceive or mislead the OLR. Attorney Krueger asks that the case against him be dismissed and that he be allowed to conclude his legal career with an untarnished record.

¶ 28.   The OLR argues that the referee correctly concluded that the OLR met its burden of proof with

respect to the three counts of misconduct alleged in its complaint. The OLR argues that by colluding with his client to conceal the debt during the bankruptcy and then unlawfully collecting it thereafter, Attorney Krueger ran afoul of bankruptcy law and committed an ethical violation. The OLR asserts the responsibility for accurately listing F.S.'s debt to Attorney Krueger on the bankruptcy schedules was both F.S.'s and Attorney Krueger's and Attorney Krueger cannot, under the guise of claiming it was his client's idea, permit a client to submit false schedules to the bankruptcy court because to do so made Attorney Krueger a party to the client's misrepresentation.

¶ 29. The OLR asserts that Attorney Krueger compounded his misrepresentation on F.S.'s bankruptcy schedules by permitting F.S. to testify falsely at the first meeting of creditors. It also argues that Attorney Krueger's misconduct includes his improper collection of the discharged debt for attorney's fees, and it says the record is replete with evidence that Attorney Krueger intended on enforcing an otherwise unenforceable arrangement for F.S. to repay the discharged attorney's fees. The OLR says a pre-bankruptcy obligation may only be binding through a reaffirmation agreement, and there was no such agreement here.

¶ 30. The OLR notes while Attorney Krueger claims he did discuss the conflict issue with F.S. on one occasion, he admits he did not obtain a written consent from F.S. When pressed at the hearing, Attorney Krueger agreed that obtaining a written consent would have been "a good idea." The OLR says a written consent was more than just a good idea, it was an absolute requirement of SCR 20:1.7(b), and the OLR says it is no defense to a violation of the rule that the client was ultimately not adversely affected by the representation.

¶ 31.  The OLR argues that testimony from F.S. was not necessary to prove the rule violations in this case, and it notes that Attorney Krueger himself made no effort to call F.S. as a witness.

¶ 32.  This court will adopt a referee's findings of fact unless they are clearly erroneous. Conclusions of law are reviewed de novo. *See In re Disciplinary Proceedings Against Eisenberg,* 2004 WI 14, ¶ 5, 269 Wis. 2d 43, 675 N.W.2d 747. The court may also impose whatever sanction it sees fit regardless of the referee's recommendation. *See In re Disciplinary Proceedings Against Widule,* 2003 WI 34, ¶ 44, 261 Wis. 2d 45, 660 N.W.2d 686. The referee's findings of fact in this case have not been shown to be clearly erroneous, and we adopt them. We also agree with the referee's conclusions of law. We further agree with the referee's recommendation for a 60–day suspension of Attorney Krueger's license to practice law in Wisconsin and a requirement that Attorney Krueger pay the costs of the proceeding.

¶ 33.  Attorney Krueger admits that he was aware, as a creditor of F.S., of a potential conflict of interest situation at the time F.S. asked Attorney Krueger to file the Chapter 7 bankruptcy petition. As *Trewin* made clear:

> If the lawyer believes there will be an actual adverse effect on the representation, the lawyer may not represent the client, even if the client would be willing to agree to the representation. It is only where the lawyer believes the representation will not be adversely affected *and* the client consents in writing that the representation can continue.

*Trewin,* 275 Wis. 2d 116, ¶ 45.

¶ 34. It is undisputed that Attorney Krueger failed to obtain F.S.'s consent to the conflict in writing as required by SCR 2:1.7(b). It is also undisputed that Attorney Krueger failed to disclose the pre-bankruptcy debt F.S. owed him on the bankruptcy petition, and he did not advise the bankruptcy trustee that F.S.'s testimony was not accurate. In addition, the evidence supports the referee's conclusion that by applying $7384 of the $40,000 check received from F.S. after the bankruptcy in payment of pre-bankruptcy attorney's fees, Attorney Krueger collected a discharged debt in violation of bankruptcy law. The evidence further supports the referee's conclusion that payment of the pre-bankruptcy debt was not a voluntary repayment by F.S. of a discharged debt but rather was part of an arrangement Attorney Krueger had with F.S. prior to filing the bankruptcy. Finally, the evidence supports the referee's conclusion that Attorney Krueger's letter to the OLR saying there was less than $500 owed to him by F.S. at the time the bankruptcy was filed was a knowing misrepresentation, in violation of SCR 22.03(6).

¶ 35. We also agree with the referee that a 60–day suspension of Attorney Krueger's license to practice law in Wisconsin is an appropriate sanction for these violations. While the fact that Attorney Krueger has practiced law for almost 50 years without any previous disciplinary problems is certainly commendable, his age and emeritus status do not immunize him from being disciplined for his misconduct. A 60–day suspension of his license is commensurate with the seriousness of the misconduct and will serve to deter other attorneys from committing similar misconduct. We also find it appropriate for Attorney Krueger to pay the costs of the proceeding.

¶ 36. IT IS ORDERED that the license of Richard J. Krueger to practice law in Wisconsin is suspended for a period of 60 days, effective March 8, 2006.

¶ 37. IT IS FURTHER ORDERED that within 60 days of the date of this order, Richard J. Krueger pay to the Office of Lawyer Regulation the costs of this proceeding, provided that if the costs are not paid within the time specified and absent a showing to this court of his inability to pay the costs within that time, the license of Richard J. Krueger to practice law in Wisconsin shall remain suspended until further order of the court.

¶ 38. IT IS FURTHER ORDERED that Richard J. Krueger comply with the provisions of SCR 22.26 concerning the duties of a person whose license to practice law in Wisconsin has been suspended.

¶ 39. N. PATRICK CROOKS, J., took no part.

¶ 40. SHIRLEY S. ABRAHAMSON, C.J. (*concurring*). Attorney Krueger objected to certain duplicative charges (which were corrected) and also asserted that the fees charged by counsel representing the Office of Lawyer Regulation (OLR) were excessive in light of the issues involved in the matter. Attorney Krueger failed to suggest a reasonable fee.

¶ 41. I join the per curiam opinion assessing Attorney Krueger with the full costs of the disciplinary proceeding.

¶ 42. I write separately once again, as I did in my concurrence in *OLR v. Konnor*, 2005 WI 37, 279 Wis. 2d 284, 694 N.W.2d 376, on the issue of imposition of costs in disciplinary proceedings in which an attorney is disciplined.

¶ 43. As I explained in *Konnor*, the issue of imposition of costs has recently divided this court in a few cases, with Justice Prosser vehemently opposing our present method of generally imposing the costs of the

602

discipline proceedings on the disciplined lawyer. Justice Butler has proposed apportioning fees on the basis of the charges proved. This method is not applicable in the present case.

¶ 44. Because the court was concerned about its internal debate about imposition of costs, the court asked the Office of Lawyer Regulation (OLR), the Board of Administrative Oversight, and the State Bar of Wisconsin to consider the issue of the imposition of costs and make recommendations to the court. As a result, Keith Sellen, director of OLR, in effect petitioned the court for a modification of SCR 22.24(1) (2004)[1] and 22.001(3) (2004),[2] relating to imposition of costs in OLR proceedings.

¶ 45. Mr. Sellen proposed that OLR-incurred attorney fees be paid by OLR through increased assessments to members of the bar and that other costs incurred by OLR in prosecuting a discipline case be

---

[1] Supreme Court Rule 22.24(1) (2004) provides as follows:

(1) The supreme court may assess against the respondent all or a portion of the costs of a disciplinary proceeding in which misconduct is found, a medical incapacity proceeding in which it finds a medical incapacity, or a reinstatement proceeding and may enter a judgment for costs. The director [of OLR] may assess all or a portion of the costs of an investigation when discipline is imposed under SCR 22.09. Costs are payable to the office of lawyer regulation.

[2] Costs are defined in SCR 22.001(3) (2004) as follows:

"Costs" means the compensation and necessary expenses of referees, fees and expenses of counsel for the office of lawyer regulation, a reasonable disbursement for the service of process or other papers, amounts actually paid out for certified copies of records in any public office, postage, telephoning, adverse examinations and depositions and copies, expert witness fees, witness fees and expenses, compensation and reasonable expenses of experts and investigators employed on a contractual basis, and any other costs and fees authorized by chapter 814 of the statutes.

603

assessed by the Supreme Court in its discretion against the disciplined lawyer.[3] This proposal was one of the several possible proposals I outlined in my *Konnor* concurrence. *See also OLR v. Backes,* 2005 WI 59, 281 Wis. 2d 1, 697 N.W.2d 49 (Bradley, J., concurring, joined by Abrahamson, C.J., Wilcox, J., & Crooks, J.) (examining the advantages and pitfalls of alternatives to the present system of apportioning costs).

¶ 46. The Court held a hearing on Mr. Sellen's petition on November 14, 2005.

¶ 47. Several persons appeared at the hearing or wrote letters discussing Mr. Sellen's proposal. Their suggestions ranged from retaining the court's current practice of imposing full costs on a disciplined attorney (except in exceptional circumstances described in each particular case) to adopting one of several methods of apportioning costs.

¶ 48. In anticipation of the hearing, the State Bar conducted a poll, posing the following question relating to imposition of costs in discipline proceedings:

---

[3] Rule 05–01, *In the Matter of the Petition for Amendment to Supreme Court Rule 22.001(3) Relating to Cost Assessments in the Lawyer Regulation System.*

The petition requested that the costs be defined to eliminate counsel fees of OLR. The petition requested that costs be defined as follows:

> "Costs" means the compensation and necessary expenses of referees, *litigation expenses other than counsel fees of the office of lawyer regulation,* a reasonable disbursement for the service of process or other papers, amounts actually paid out for certified copies of records in any public office, postage, telephoning, adverse examinations and depositions and copies, expert witness fees, witness fees and expenses, compensation and reasonable expenses of experts and investigators employed on a contractual basis, and any other costs and fees authorized by chapter 814 of the statutes (emphasis added).

Currently, the Wisconsin Supreme Court generally charges full costs of disciplinary proceedings, including legal fees, against an attorney who is found to have violated one or more of the Rules of Professional Responsibility. The Court generally imposes full costs even if some OLR charges against the attorney are dismissed or the discipline is less than OLR requested. Should the Supreme Court (select one):

___ Continue the current assessment policy of generally imposing full costs against the disciplined attorney.

___ Revise its policy to permit apportionment of costs. This might require an increase in the annual OLR assessments to lawyers.

___ Adopt the "American Rule" in which each litigant pays its own attorney fees? Under this option, a disciplined attorney would not be responsible for the fees incurred by OLR in proving a violation. This would require an increase in annual OLR assessments to lawyers.

___ Adopt the "English Rule" in which the losing party pays the prevailing party's attorney fees? This option is essentially the same as current policy, except that OLR would be required to pay attorney fees when an attorney prevails on all counts. This option would also require an increase in the annual OLR assessments to lawyers.

¶ 49.  The poll results were not known at the time of the hearing. The Bar recently reported an early draft of the poll results to the court. The attorneys and judges polled were significantly divided on how costs should be imposed on disciplined attorneys. Following is the Bar's summary of the results of the Bar poll:

Most respondents split between continuing the current assessment policy (37%) and permitting apportionment of costs (36%) for how the Wisconsin Supreme Court should handle costs of disciplinary proceedings. Another

605

17% feel the Court should adopt the "English Rule," 9% feel it should adopt the "American Rule," and a handful of respondents checked a combination of methods.

| | |
|---|---|
| Continue current assessment policy | 37% |
| Revise policy to permit apportionment of costs | 36% |
| Adopt "English Rule" - losing party pays the prevailing party's attorney fees | 17% |
| Adopt "American Rule" - each litigant pays its own attorney fees | 9% |

Nearly one-half (47%) of judges feel the Supreme Court should continue its current assessment policy, while lawyers split between permit apportionment of costs (37%) and continue the current policy (33%). Another 33% of judges chose permit apportionment of costs.

¶ 50. The court has made no decision on Mr. Sellen's petition as of the date of the release of this opinion.

¶ 51. I agree with Justice Bradley's concurring opinion in *OLR v. Backes,* joined by three other justices, that until the court acts on Mr. Sellen's petition, we should follow our present practice of imposing full costs on a disciplined attorney except in exceptional circumstances (as described in the particular case in which we deviate from this general practice).[4] Charging full costs to the disciplined lawyer is based on our decision to place the onus of the costs of the disciplinary proceeding on the disciplined attorney who created the need for the disciplinary proceeding, rather than placing the onus of the

___

[4] *OLR v. Backes,* 2005 WI 59, ¶¶ 64, 66, 69, 70, 281 Wis. 2d 1, 697 N.W.2d 49 (Bradley, J., concurring, joined by Abrahamson, C.J., Wilcox, J., & Crooks, J.).

costs of the disciplinary proceeding on the "innocent" members of the bar. As I wrote in *Konnor*, we should, in exercising our discretion to deviate from the full cost approach, hold ourselves to the same high standards we demand of circuit courts when exercising their discretion.

¶ 52. For the reasons set forth I join the per curiam and write separately.

¶ 53. DAVID T. PROSSER, J. (*concurring in part, dissenting in part*). I agree with the referee's recommendation, affirmed by this court, to suspend Attorney Krueger's license to practice law for a period of 60 days. But I disagree with this court's determination to impose full costs of more than $20,000 for the disciplinary proceeding.

¶ 54. This case is reminiscent of *OLR v. Konnor*, 2005 WI 37, 279 Wis. 2d 284, 694 N.W.2d 376, in that the OLR sought much more stringent discipline than it obtained. The attorney who successfully fought the severity of the discipline is nonetheless required to pay full costs.

¶ 55. Supreme Court Rule 22.24(1) provides in part that "The Supreme Court may assess against the respondent all or a portion of the costs of a disciplinary proceeding in which misconduct is found. . . . " This is a reasonable rule, but it implies the exercise of discretion. As Justice Butler noted in *OLR v. Polich*, 2005 WI 36, ¶ 38, 279 Wis. 2d 266, 694 N.W.2d 367 (Butler, J., concurring in part, dissenting in part), our cases show a pattern of assigning full costs to disciplined attorneys "with little or no rationale," irrespective of the factual circumstances. Although the failure to exercise discretion is tantamount to an erroneous exercise of discretion, our court consistently proceeds as though this

607

principle is inapplicable to the imposition of costs in attorney discipline cases.

¶ 56. Here, OLR issued a three-count complaint and it subsequently proved the three counts to the satisfaction of the referee. However, it also asked that Attorney Krueger be suspended for six months. Attorney Krueger resisted. After an evidentiary hearing, the referee noted that Attorney Krueger had no previous discipline and that "[a] six-month suspension . . . would work an undue hardship given the fact that under SCR 22.28, an attorney's license does not automatically get reinstated but requires an additional hearing before a referee pursuant to SCR 22.29 . . . ." The investigation, hearing, and supreme court review of a reinstatement motion may take a year, so that a six-month suspension may end up as an 18–month suspension, or more. Under current practice, the disciplined attorney is expected to pay the full cost of the reinstatement process as well as the cost of initial discipline.

¶ 57. Under these circumstances, an attorney has a real incentive to fight any proposed suspension of six months or more if that proposed suspension is not certain to be adopted. But the attorney will be forced to pay OLR's prosecution costs so long as any discipline is imposed.

¶ 58. This court should not enforce such a rule without explaining or justifying what it is doing. Rather, the court should ask referees to recommend costs, full or partial, based on the particular circumstances in each case, and to explain each recommendation as part of the Referee's Report. This regimen would permit the court to react to a recommendation and develop criteria for the equitable assessment of costs.