In the MATTER OF DISCIPLINARY PROCEEDINGS AGAINST
Daniel F. DeMaio, Attorney at Law:

OFFICE OF LAWYER REGULATION,
Complainant-Respondent,

v.

Daniel F. DeMaio, Respondent-Appellant.

Supreme Court

*No. 2008AP1119–D. Decided October 1, 2009.*

2009 WI 95

(Also reported in 773 N.W.2d 439.)

¶ 1. PER CURIAM. We review a report and recommendation by Referee James G. Curtis that Attorney Daniel F. DeMaio be publicly reprimanded for his professional misconduct and that he be ordered to pay the full costs of this disciplinary proceeding.

¶ 2. Following the filing of the referee's report and recommendation, Attorney DeMaio filed a document entitled "Respondent's Dispositional Memo," which purported to address the question of the appropriate sanction. After the Office of Lawyer Regulation (OLR) filed a motion to strike this filing because it was not a notice of appeal, Attorney DeMaio withdrew the document. Thus, since no appeal has been filed, our review proceeds under SCR 22.17(2).[1]

¶ 3. When reviewing a referee's report and recommendation in a disciplinary matter, we will affirm the referee's findings of fact unless they are found to be clearly erroneous, but we review conclusions of law de novo. *See In re Disciplinary Proceedings Against In-*

---

[1] SCR 22.17(2) states:

> If no appeal is filed timely, the supreme court shall review the referee's report; adopt, reject or modify the referee's findings and conclusions or remand the matter to the referee for additional findings; and determine and impose appropriate discipline. The court, on its own motion, may order the parties to file briefs in the matter.

*glimo,* 2007 WI 125, ¶ 5, 305 Wis. 2d 71, 740 N.W.2d 125; *In re Disciplinary Proceedings Against Carroll,* 2001 WI 130, ¶ 29, 248 Wis. 2d 662, 636 N.W.2d 718. With respect to the question of discipline, we determine the appropriate level of discipline given the particular facts of each case, independent of the referee's recommendation, but benefiting from it. *See In re Disciplinary Proceedings Against Widule,* 2003 wi 34, ¶ 44, 261 Wis. 2d 45, 660 N.W.2d 686.

¶ 4. Attorney DeMaio was admitted to the practice of law in Wisconsin in 1990 and currently practices in Hudson. In 1998 he received a private reprimand. That is the only prior discipline imposed on Attorney DeMaio.

¶ 5. All three counts in this disciplinary proceeding relate to Attorney DeMaio's representation of and interactions with client M.B. The relevant facts set forth below are taken from the referee's findings of fact.

¶ 6. As of 2004 M.B. was married to, but separated from, G.P. M.B. and G.P. together owned a piece of residential real estate that will be referenced in this decision simply as the "Property." In February 2004 M.B. and G.P. signed a listing contract for the sale of the Property. The Property was subject to a number of mortgages. On May 13, 2004, First National Bank of Hudson (FNB) obtained a judgment of foreclosure on the Property. A sheriff's sale was held later in 2004, at which time FNB became the entity entitled to purchase the Property, subject to the circuit court confirming the sale.

¶ 7. Attorney DeMaio's attorney-client relationship with M.B. began in October 2004, when the St. Croix County circuit court appointed Attorney DeMaio at county expense to represent M.B. in a criminal proceeding. The circuit court ordered M.B. to make

monthly $100 payments to the county as reimbursement for payment of Attorney DeMaio's fees. M.B. made two such payments. In April 2005 the state filed a motion to dismiss the criminal charges against M.B., and the circuit court granted the motion to dismiss. The court approved Attorney DeMaio's fee request and ordered that M.B.'s cash bail of $750 and her two $100 monthly payments be applied toward the payment of Attorney DeMaio's fees and expenses.

¶ 8. While Attorney DeMaio was representing M.B. on the criminal matter, he also began to represent her on a private pay basis with respect to debt relief matters. In light of the foreclosure action and the sheriff's sale regarding the Property, Attorney DeMaio told M.B. that he could delay the foreclosure process by filing a bankruptcy petition on behalf of M.B. and G.P. M.B. retained Attorney DeMaio to pursue a bankruptcy action. At least initially, the primary purpose of these efforts was to preserve any equity in the Property for M.B. and G.P.

¶ 9. The referee found that Attorney DeMaio never entered into a written fee agreement with M.B. regarding his representation of her on debt relief matters. In addition, there is no writing which itemizes Attorney DeMaio's time, the work he performed, or the expenses he incurred when representing M.B., with the exception of his work on the criminal matter.

¶ 10. Attorney DeMaio had M.B. complete a relatively short debt relief client information sheet. Attorney DeMaio then filed a Chapter 13 personal bankruptcy petition on M.B.'s behalf. Although a Chapter 13 petition is designed for individuals with employment income, M.B. had no employment income at the time the petition was filed. In addition, the petition was filed only on behalf of M.B. and did not include G.P.

¶ 11. The bankruptcy court ordered M.B. to submit a Chapter 13 plan and other documents by December 20, 2004. It also scheduled an initial meeting of M.B.'s creditors for January 18, 2005.

¶ 12. On December 16, 2004, Attorney DeMaio sent a letter to M.B. asking her to come to his office immediately in order to prepare a Chapter 13 plan. On December 17, 2004, Attorney DeMaio sent another letter to M.B., this time advising her that the Property had been sold at a sheriff's sale and was awaiting court confirmation of the sale.

¶ 13. On December 20, 2004, the United States bankruptcy trustee assigned to M.B.'s case filed a motion seeking dismissal of her Chapter 13 petition because she had failed to file a plan as required by the bankruptcy court's order. M.B. gave a $700 money order to Attorney DeMaio that he was to send to the trustee as evidence of her good faith. Attorney DeMaio forwarded the money order to the trustee on January 18, 2005. Also on that date Attorney DeMaio and M.B. attended the initial meeting of creditors.

¶ 14. Despite the pendency of the trustee's motion to dismiss, Attorney DeMaio and M.B. did not file a Chapter 13 plan. Consequently, on January 21, 2005, the bankruptcy court dismissed the bankruptcy petition. According to a specific finding by the referee, the dismissal of the Chapter 13 bankruptcy proceeding did not end the attorney-client relationship between Attorney DeMaio and M.B. with respect to obtaining debt relief for M.B.

¶ 15. On or about January 31, 2005, the trustee sent to Attorney DeMaio a $700 check made payable to M.B. The check was intended to be a refund of the $700 money order that Attorney DeMaio had submitted on M.B.'s behalf. Although M.B. may have been informed

orally that Attorney DeMaio's office had received the $700 refund check, Attorney DeMaio did not inform M.B. of that fact in writing. The referee further found that Attorney DeMaio never sought written authority or permission from M.B. to deposit the $700 check. Attorney DeMaio deposited the $700 check into an account that his law office maintained. Although Attorney DeMaio initially stated that the check had been deposited into a "Cost Account," he later told the OLR District Committee that he had deposited the check into his "Earned Fee Account."

¶ 16. Attorney DeMaio knew from his representation of M.B. that M.B. and G.P. were attempting to sell the Property even while the sheriff's sale was awaiting confirmation. M.B. had attempted to convince Attorney DeMaio that he should consider personally purchasing the Property. In late February 2005 Attorney DeMaio told M.B. that he and his wife might be interested in the Property and that they wished to view it. As a result, M.B.'s real estate agent showed the Property to Attorney DeMaio and his wife, who expressed an interest in purchasing it.

¶ 17. At some point around this time, M.B. learned that the confirmation of the sheriff's sale of the Property was imminent. She subsequently met with Attorney DeMaio. Attorney DeMaio admits that he had a conversation with M.B. concerning his interest in purchasing the Property and the matter of the real estate agent's commission. Attorney DeMaio asserts that M.B. raised the question as to whether she could avoid paying a commission to the real estate agent by filing a bankruptcy petition. The referee did not make a specific factual finding as to when these discussions occurred.

¶ 18. Attorney DeMaio did begin to prepare Chapter 7 bankruptcy documents for M.B. in mid-March 2005. According to the referee's report, "DeMaio stated he does not recall precisely why he was preparing Chapter 7 bankruptcy documents for [M.B.] at that time, but he 'presumes' it was at [M.B.'s] request." As part of these efforts, Attorney DeMaio also sent forms to G.P. to be completed and returned. Attorney DeMaio sent no further written communications to M.B. requesting additional information or indicating that additional steps needed to be taken in order to commence a Chapter 7 bankruptcy action. Attorney DeMaio, however, never filed a Chapter 7 bankruptcy on behalf of M.B. or G.P.

¶ 19. On March 14, 2005, FNB obtained an order confirming the sheriff's sale of the Property to FNB. FNB took title to the Property and changed the locks on the house. M.B. had vacated the Property by this time.

¶ 20. Either M.B. or the real estate agent informed Attorney DeMaio that FNB had obtained title to the Property. After FNB took title to the Property, Attorney DeMaio contacted FNB and expressed an interest in purchasing the Property from the bank. Attorney DeMaio initially offered to pay $250,000 for the Property, but the bank responded that the purchase price was $270,000. Attorney DeMaio and his wife subsequently purchased the Property from FNB for $270,000.

¶ 21. Attorney DeMaio did not inform M.B. that he intended to make an offer to purchase the Property before he submitted an offer to the bank. The appraisal report and property inspection report connected with Attorney DeMaio's offer to purchase are dated March 28, 2005, after FNB took title to the Property. The

transaction closed on April 1, 2005, with Attorney DeMaio and his wife receiving a warranty deed from FNB.

¶ 22. The referee expressly found that no discussion took place at any time between Attorney DeMaio and M.B. where Attorney DeMaio advised M.B. of an actual or potential conflict of interest between them because of Attorney DeMaio's interest in the Property. Attorney DeMaio never prepared any writing advising M.B. of the potential conflict of interest, and he did not obtain a written waiver of the potential conflict of interest.

¶ 23. The referee also explicitly found that Attorney DeMaio's purchase of the property from FNB did not cause any economic loss or detriment to M.B. When M.B. and G.P. had initially placed the Property on the market, the asking price was $334,000. The listing price, however, was reduced several times. By March 2005 the listing price had dropped to $275,000, with $6,200 in allowances, for a net asking price of $268,800. Thus, Attorney DeMaio did not benefit from purchasing the property from the bank instead of from M.B. and G.P. In addition, the referee found that at this sales price, there would not have been any equity in the home for M.B. and G.P. after satisfying the loan obligations to the bank.

██

¶ 24. Based on these findings of fact, the referee concluded that Attorney DeMaio had violated former SCR 20:1.15(d)(1),[2] by failing to notify M.B. in writing

---

[2] Former SCR 20:1.15(d)(1) (effective July 1, 2004, through June 30, 2007) provided:

> Upon receiving funds or other property in which a client has an interest, or in which the lawyer has received notice that a 3rd

that he had received the $700 refund check from the bankruptcy trustee. Although no written notice was provided, in violation of the rule's requirements, the referee did note that Attorney DeMaio believed that M.B. had been informed that the check was in Attorney DeMaio's office.[3]

■

¶ 25. In addition, the referee concluded that Attorney DeMaio had demonstrated a lack of diligence and promptness, in violation of SCR 20:1.3,[4] by failing to ascertain the status of the confirmation of the sheriff's sale of the Property. Attorney DeMaio initially contended that he had no obligation to determine the status of the confirmation because by March 2005, M.B. had no equity in the home and had moved to another residence. The referee stated in his report, however, that when Attorney DeMaio filed the Chapter 13 bankruptcy petition in December 2004, a primary purpose of that filing was to attempt to preserve any equity that M.B. might have had in the Property, which depended on the amount that could be realized in a sale of the Property. Consequently, the referee concluded that At-

---

party has an interest identified by a lien, court order, judgment, or contract, the lawyer shall promptly notify the client or 3rd party in writing. Except as stated in this rule or otherwise permitted by law or by agreement with the client, the lawyer shall promptly deliver to the client or 3rd party any funds or other property that the client or 3rd party is entitled to receive.

[3] We note that there was no claim in the OLR's complaint that Attorney DeMaio violated any rule by depositing the check into a regular business account instead of immediately delivering it to M.B. or depositing it into a client trust account. The referee therefore reached no legal conclusions on this subject. We also do not reach the issue.

[4] SCR 20:1.3 states, "A lawyer shall act with reasonable diligence and promptness in representing a client."

torney DeMaio retained an obligation to ascertain whether and when the confirmation would occur because that information was needed for Attorney DeMaio to continue to advise M.B. properly in early 2005 regarding what legal options, if any, she might have. This was especially true because Attorney DeMaio's expression of interest in the property may have given M.B. a glimmer of hope that some equity could be preserved. Because he failed to obtain the confirmation information, the referee concluded that Attorney DeMaio had violated SCR 20:1.3.

¶ 26. Finally, the referee also concluded that Attorney DeMaio had violated former SCR 20:1.7(b)[5] by continuing his representation of M.B. despite the fact that the representation may have been materially limited by Attorney DeMaio's own interest in purchasing the Property, in which M.B. and her husband retained an interest. The referee commented that Attorney DeMaio may have reasonably believed that the representation would not be adversely affected by his personal interest in his client's property, but such a belief did not satisfy the requirements of the rule because the rule also required Attorney DeMaio to consult with his client regarding the conflict and to obtain written consent to continue the representation. Attorney De-

---

[5] Former SCR 20:1.7(b) (effective prior to July 1, 2007) provided, in pertinent part:

> A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:

> (1) the lawyer reasonably believes the representation will not be adversely affected; and

> (2) the client consents in writing after consultation.

Maio neither consulted with M.B. about the at least potential conflict of interest nor did he obtain a written waiver of the conflict.

¶ 27. Although the referee found that Attorney DeMaio's purchase of the Property after the bank took title to it did not cause economic loss to M.B., the referee noted that it did create an appearance of impropriety in M.B.'s view. M.B. placed her faith in Attorney DeMaio's efforts to avoid the foreclosure and to preserve any possible equity in the Property. Even though there may not have been anything that could have been done as of March 2005 to change the situation regarding FNB's purchase of the Property or the loss of M.B.'s equity, Attorney DeMaio had learned of the situation regarding the Property by virtue of his representation, and he purchased the Property within a few weeks after M.B. lost title to her home. The referee stated that under these circumstances it was very understandable for M.B. to feel betrayed by her attorney, especially when he had previously failed to consult with her or obtain a written waiver for a potential conflict of interest.

¶ 28. With respect to the level of discipline, the OLR sought a 60–day suspension, citing *In re Disciplinary Proceedings Against Riegleman,* 2003 WI 3, 259 Wis. 2d 1, 657 N.W.2d 339, and *In re Disciplinary Proceedings Against Krueger,* 2006 WI 17, 288 Wis. 2d 586, 709 N.W.2d 857. On the other hand, Attorney DeMaio requested that the referee recommend a private reprimand. He contended that his conduct was less harmful than that which occurred in *Public Reprimand of William P. Skemp,* 2008–7, where Attorney Skemp actually completed the purchase of a house from his clients without consulting with them about the conflict of interest and without obtaining a written waiver, and

also separately violated SCR 20:8.4(c) when he later resold the property without disclosing to the buyer that the property had been contaminated by a fuel oil spill.

¶ 29. The referee did not find any of the precedents cited by the parties to be directly on point. All three cases involved attorneys who were found to have engaged in dishonesty, fraud, deceit or misrepresentation, in violation of SCR 20:8.4(c). In the present case, the referee noted that Attorney DeMaio had not been charged with a violation of SCR 20:8.4(c), and there was no clear and convincing evidence that he had engaged in dishonest or deceitful acts. He characterized Attorney DeMaio's misconduct as involving more of a lack of diligence and communication than dishonesty. Further, none of the cases cited by the parties involved the same three rules violations that Attorney DeMaio had committed.

¶ 30. The referee noted that Attorney DeMaio had received a prior reprimand in 1998, but gave that prior discipline little weight since it was fairly remote in time and did not involve similar misconduct. The referee also indicated that he believed the fact that Attorney DeMaio's long-time secretary had been terminally ill with cancer during the relevant time period was a major mitigating factor due to her frequent absences from work and Attorney DeMaio's emotional difficulties with the situation. The referee stated that Attorney DeMaio had acknowledged that he had experienced a loss of empathy for clients during this time period and that he had given "shoddy treatment" to M.B. The referee concluded that Attorney DeMaio had demonstrated genuine remorse for his misconduct in the representation of M.B. Ultimately, balancing the fact that Attorney DeMaio's misconduct resulted from a lack of diligence and communication with his client with the

557

fact that his failure to consult with and obtain a written waiver from M.B. for the conflict of interest created an appearance of impropriety in M.B.'s eyes, the referee concluded that a public reprimand would be the appropriate level of discipline.

¶ 31. The referee also recommended that Attorney DeMaio be required to pay the full costs of this disciplinary proceeding. The OLR subsequently submitted a statement of costs showing total costs of $5,290.22 as of February 20, 2009. Attorney DeMaio did not file an objection to the requested costs.

¶ 32. We conclude that the referee's findings of fact are not erroneous, and we adopt them. We also determine that those findings support the referee's conclusions that Attorney DeMaio committed the three violations alleged in the OLR's complaint. Attorney DeMaio had a clear obligation to notify M.B. of his receipt of the refund check. Given the fact that he was advising M.B. regarding debt relief matters, he also clearly had an obligation to ascertain when the confirmation of the sheriff's sale would occur and whether M.B. had any options to prevent the confirmation. With respect to the conflict of interest charge, although it appears that Attorney DeMaio did not have any negotiations with M.B. regarding price or the preparation of an offer to purchase her property, his interest in the Property and his expression of that interest to M.B. while she still had an interest in the Property may have materially limited his representation of M.B., such that he should have consulted with M.B. and obtained her written consent to continuing the representation.

¶ 33. With respect to the level of discipline, we agree with the referee that a public reprimand is the appropriate discipline to impose in this instance. There was no finding by the referee that Attorney DeMaio

maneuvered the situation to obtain a financial benefit for himself at his client's expense or that he engaged in dishonest or deceitful conduct. On the other hand, he did fail to take certain necessary steps to provide proper representation to M.B., and his failure to consult with and obtain a written waiver from M.B. gave her the impression that he had looked out for his own interests rather than her interests. We conclude that a public reprimand is commensurate with Attorney DeMaio's misconduct, and that it will properly serve to deter Attorney DeMaio and other attorneys from committing similar misconduct in the future.

¶ 34. Finally, we determine that Attorney DeMaio should be required to pay the full costs of this disciplinary proceeding.

¶ 35. IT IS ORDERED that Daniel F. DeMaio is publicly reprimanded for his professional misconduct.

¶ 36. IT IS FURTHER ORDERED that within 60 days of the date of this order, Daniel F. DeMaio shall pay to the Office of Lawyer Regulation the costs of this proceeding. If the costs are not paid within the time specified and absent a showing to this court of his inability to pay the costs within that time, the license of Daniel F. DeMaio to practice law in Wisconsin shall be suspended until further order of the court.